Docket No. 07 Civ. 02142 (MGC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAXINE VESTERHALT,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
BAHIR MUSTAFA, Shield No. 8703, DETECTIVE
THOMAS HOURICAN, Shield #7555, DETECTIVE
ROBERT YAEGER, Shield #5676, DETECTIVE
TRACY KUPINSKI, Shield #6863, DETECTIVE
THOMAS DRISCOLL Shield #7187, and
LIEUTENANT RUEL STEPHENSON, 28th Precinct,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Bahir Mustafa, Thomas Hourican, Robert*
*Yaeger, Tracyann Kupinski, Thomas Driscoll,*
*and Ruel Stephenson*
*100 Church Street*
*New York, N.Y. 10007*

Of Counsel:  Philip S. Frank
Tel:  (212) 788-0893

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT

      POINT I

           THE PARTIES REACHED A BINDING, ENFORCEABLE SETTLEMENT AGREEMENT TERMINATING THIS ACTION ................................................. 5

           A.   The Settlement Agreement is Enforceable Because it was Memorialized in Writing and Signed by Plaintiff Vesterhalt ................................................. 5

           B.   The Settlement Agreement is Enforceable Under Either New York State or Federal Law ..................................... 7

           C.   Assuming *Arguendo* the Absence of a Formalized Signed Writing Memorializing the Settlement Agreement, the Settlement Entered Into Orally is Still Enforceable ........................................ 11

      STANDARD OF REVIEW FOR SUMMARY JUDGMENT ....................................... 14

      POINT II

           PLAINTIFF CANNOT MAINTAIN ANY CLAIM OF EXCESSIVE FORCE. ........................................................... 15

      POINT III

           DEFENDANTS HOURICAN, KUPINSKI, YAEGER, DRISCOLL, MUSTAFA AND STEPHENSON'S ENTRY WAS JUSTIFIED BY THE EMERGENCY CIRCUMSTANCES EXCEPTION TO THE WARRANT REQUIREMENT ............................................................ 18

**Page**

POINT IV

      PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE DEFENDANTS' CONFINEMENT WAS PRIVILEGED. ...................................................................22

      A.  Defendants' confinement of plaintiff was privileged pursuant to Mental Hygiene Law § 9.41.......................................................................23

      B.  Defendants' confinement of plaintiff was privileged because it was based on probable cause.......................................................................24

POINT V

      PLAINTIFF MAXINE VESTERHALT'S CLAIMS UNDER NEW YORK STATE LAW SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO SUIT...................................................28

POINT VI

      PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF NEW YORK...................................................29

CONCLUSION...........................................................................................32

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                 <u>Pages</u>

Alvarez v. City of New York,
    146 F. Supp. 2d 327 (S.D.N.Y. 2001)...................................................................11

Anderson v. Creighton,
    483 U.S. 635 (1987)...........................................................................................25

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...........................................................................................15

Anthony v. City of New York,
    2001 U.S. Dist. LEXIS 8923 (S.D.N.Y. July 2, 2001)
    aff'd, 339 F.3d 129 (2d Cir. 2003)................................................................23-24

Baez v. New York City Health and Hospitals Corp.,
    80 N.Y.2d 571 (1992).........................................................................................28

Bailey v. Tricolla,
    94 Civ. 4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 11, 1996).......................28

Bass v. Jackson,
    790 F.2d 260 (2d Cir. 1986)..........................................................................16, 17

Bernard v. United States,
    25 F.3d 98 (2d Cir. 1994)..............................................................................22, 26

Bulanov v. Town of Lumberland Constable,
    00 Civ 4292 (SA), 2002 U.S. Dist. LEXIS 1715 (S.D.N.Y. Feb. 6, 2002) .............................26

Bove v. City of New York,
    98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999) .........................17

Brigham City v. Stuart,
    126 S. Ct. 1943 (U.S. 2006).................................................................................19

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002)....................................................................25

Brown v. Metropolitan Transportation Authority,
    717 F. Supp. 257 (S.D.N.Y. 1989) ......................................................................29

Celotex v. Catrett,
    477 U.S. 317 (1986)...........................................................................................15

**Cases**                                                                                                    **Pages**

Cerrone v. Brown,
    246 F.3d 194 (2d Cir. 2001)..........................................................................26

Ciaramella v. Reader's Digest Ass'n,
    131 F.3d 320 (2d Cir. 1997)..........................................................................11

City of St. Louis v. Praprotnik,
    485 U.S. 112 (1985).....................................................................................30

Clinton v. City of New York,
    98 Civ. 3810 (JSM), 1999 U.S. Dist. LEXIS 2145 (S.D.N.Y. Mar. 2, 1999) .........................29

Codling v. City of New York,
    01 Civ. 2884 (RWS), 2002 U.S. Dist. LEXIS 16547 (S.D.N.Y. Sept. 5, 2002).....................25

Colon v. City of New York,
    60 N.Y.2d 78 (1983) .....................................................................................26

Conway v. Brooklyn Union Gas Co.,
    236 F. Supp. 2d 241 (E.D.N.Y. 2002) .......................................................8, 9, 10, 12

Coons v. Casabella,
    284 F.3d 437 (2d Cir. 2002)..........................................................................26

Covington v. City of New York,
    171 F.3d 117 (2d Cir. 1999)..........................................................................22

Cunningham v. Rodriguez,
    01 Civ. 1123 (DC), 2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002).....................17

Curry v. City of Syracuse,
    316 F.3d 324 (2d Cir. 2003)......................................................................22, 25

D'Amico v. City of New York,
    132 F.3d 145 (2d Cir. 1998),
    cert. denied, 524 U.S. 911 (1998) ..................................................................14

Daniels v. City of New York,
    03 Civ. 0809 (GEL), 2003 U.S. Dist. LEXIS 19765 (S.D.N.Y. Nov. 3, 2003).....................26

Davidson v. Bronx Municipal Hosp.,
    64 N.Y.2d 59 (1984) .....................................................................................29

**Cases**                                                                  **Pages**

Devenpeck v. Alford,
    543 U.S. 146 (2004)..............................................................................27

Dukes v. City of New York,
    879 F. Supp. 335 (S.D.N.Y. 1995) ......................................................15

Edwards v. Born, Inc.,
    792 F.2d 387, 391 (3d Cir. 1986).........................................................9

Feinberg v. Saks & Co.,
    56 N.Y.2d 206, 210 (1982) ................................................................25

Felder v. Casey,
    487 U.S. 131 (1988)......................................................................28-29

Fennel v. TLB Kent Co.,
    865 F.2d 498 (2d Cir. 1989)................................................................8

Flippo v. West Virginia,
    528 U.S. 11, 120 S. Ct. 7, 145 L. Ed. 2d 16 (1999) .............................18

Foster v. City of New York,
    2000 U.S. Dist. LEXIS 1251 (S.D.N.Y. Feb. 7, 2000)........................8, 9

Gaglia v. Nash,
    8 A.D.3d 992 (N.Y. App. Div. 4th Dep't 2004) ....................................8

Gallo v. Prudential Residential Servs.,
    22 F.3d 1219 (2d Cir. 1994)...............................................................14

Georgia v. Randolph,
    547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006).................19, 20

Glass v. Mayas,
    984 F.2d 55, 57-58 (2d Cir. 1993) .....................................................23

Gilbert v. United States,
    479 F.2d 1267 (2d Cir. 1973).............................................................9

Groh v. Ramirez,
    540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) ..................18

Higgins v. City of Oneonta,
    208 A.D.2d 1067 (N.Y. App. Div. 3d Dep't 1994) ..............................23

**Cases**                                                                    **Pages**

Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,
    04 Civ. 1621 (KMW), 2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005) ...............11, 13

Hudson v. McMillian,
    503 U.S. 1 (1992) ...........................................................................................18

Illinois v. Gates,
    462 U.S. 213 (1983) ........................................................................................25

In re Artha Mgmt., Inc.,
    91 F.3d 326, 329 (2d Cir. 1996) ...................................................................8, 9

Int'l Telemeter Corp. v. Teleprompter Corp.,
    592 F.2d 49 (2d Cir. 1979) .................................................................................8

Janneh v. GAF Corp.,
    887 F.2d 432 (2d Cir. 1989) ..............................................................................6

Johnson v. Glick,
    481 F.2d 1028 (2d Cir. 1973) ..........................................................................17

Jones v. Trump,
    96 Civ. 2995, 96 Civ. 6927 (SAS),
    1997 U.S. Dist. LEXIS 7324 (S.D.N.Y. May 22, 1997) .................................29

Katz v. United States,
    389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) ...............................18-19

Kerman v. City of New York,
    374 F.3d 93 (2d Cir. N.Y. 2004) .....................................................................23

Krauth v. Executive Telecard, Ltd.,
    890 F. Supp. 269 (S.D.N.Y. 1995) ............................................................11, 12

Lee v. City of New York,
    00-C 2002 U.S. Dist. LEXIS 13696 (E.D.N.Y. July 22, 2002) .......................25

Lowth v. Town of Cheektowage,
    82 F.3d 563 (2d Cir. 1996) ...........................................................................25-26

Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000) .........................................................................25, 26

**Cases**                                                                 **Pages**

Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...............................................................................14

McKinnon v. Patterson,
    568 F.2d 930 (2d Cir. 1977),
    cert. denied, 434 U.S. 1087 (1978) ....................................................16

Media Group, Inc. v. HSN Direct Int'l, Ltd.,
    202 F.R.D. 110 (S.D.N.Y. 2001) .........................................................6

Meetings & Expositions, Inc. v. Tandy Corp.,
    490 F.2d 714, 717 (2d Cir. 1974)........................................................6

Miloslavsky v. AES Eng'g Society,
    808 F. Supp. 351 (S.D.N.Y. 1992),
    aff'd, 993 F.2d 1534 (2d Cir. 1993).....................................................26

Mincey v. Arizona,
    437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)......................19

Monaghan v. SZS 33 Assocs.,
    73 F.3d 1276 (2d Cir. 1996)...............................................................13

Monday v. Oullette,
    118 F.3d 1099, 1102 (6th Cir. 1997) .................................................23

Monell v. Department of Social Services,
    436 U.S. 658 (1978).......................................................................29, 30

Morrison v. Bethlehem Steel Corp.,
    75 A.D.2d 1001 (N.Y. App. Div. 4th Dep't 1980) ...............................8

Oklahoma v. Tuttle,
    471 U.S. 808 (1985).......................................................................29, 30

Omega Eng'g, Inc. v. Omega, S.A.,
    432 F.3d 437 (2d Cir. 2005).................................................................5

Otero v. Town of Southampton,
    194 F. Supp. 2d 167 (E.D.N.Y. 2002) ...............................................26

Parrat v. Taylor,
    451 U.S. 527 (1984)...........................................................................29

**Cases**                                                                    **Pages**

Payton v. New York,
    445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)..........................................18

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986)........................................................................................30

Perkins v. Brown,
    285 F. Supp. 2d 279 (E.D.N.Y. 2003) ...............................................................17

Phillips v. Eppolito et al.,
    02 CV 5662 (DLC), 2004 U.S. Dist. LEXIS 18565 (S.D.N.Y. 2004)....................15

Phillips v. Village of Frankfort,
    31 Misc. 2d 815, 220 N.Y.S.2d 171 (Sup. Ct. Herkimer Co. 1961)........................28

Pierson v. Ray,
    386 U.S. 547 (1967)........................................................................................25

Powell v. Omnicom,
    497 F.3d 124 (2d Cir. 2007)...........................................................................5-6

Project Release v Prevost,
    551 F. Supp. 1298 (E.D.N.Y. 1982) ..................................................................23

Reprosystem, B.V. v. SCM Corp.,
    727 F.2d 257 (2d Cir. 1984)............................................................................14

Rhulen Agency, Inc. v. Gramercy Brokerage, Inc.,
    106 A.D.2d 725 (N.Y. 1984) ..........................................................................13

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997).......................................................................25, 26

Robinson v. Matos,
    97 Civ. 7144 (TPG), 1999 U.S. Dist. LEXIS 5447 (S.D.N.Y. Apr. 16, 1999)........28

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)........................................................................22, 25

Sealey v. Giltner,
    116 F.3d 47 (2d Cir. 1997).............................................................................16

Shakur v. McGrath,
    517 F.2d 983 (2d Cir. 1975)...........................................................................28

**Cases**                                                                    **Pages**

Silas v. City of New York,
    536 F. Supp. 2d 353 (S.D.N.Y. 2008)...........................................................7

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)................................................................26

Sorlucco v. New York City Police Department,
    971 F.2d 864 (2d Cir. 1992)..............................................................30

Thomas v Culberg,
    741 F. Supp. 77 (S.D.N.Y. 1990) .......................................................23

Thomson v. Rocco,
    2004 U.S. Dist. LEXIS 10512 (S.D.N.Y. June 8, 2002)......................8, 9

Tierney v. Davidson,
    133 F.3d 189 (2d Cir. 1988)..............................................................19

United States v. Bank of N.Y.,
    14 F.3d 756 (2d Cir. 1994)................................................................6

United States v. Holloway,
    290 F.3d 1331 (11th Cir. 2002) .........................................................20

United States v. Int'l Brotherhood of Teamsters,
    986 F.2d 15 (2d Cir. 1993)..........................................................8, 9, 10

United States v. Richardson,
    208 F.3d 626 (7th Cir. 2000) ........................................................20, 21

Vari-O-Matic Machine Corp. v. N.Y. Sewing Machine Attachment Corp.,
    629 F. Supp. 257 (S.D.N.Y. 1986) .....................................................6

Velasquez v. Bankich,
    97 CV 8424 (AKH), 2000 U.S. Dist. LEXIS 15412 (S.D.N.Y. 2000) ....................15

Vippolis v. Village of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)................................................................30

Walker v. City of New York,
    No. 05 Civ. 0004 (JBW)(JMA),
    2006 U.S. Dist. LEXIS 34345 (E.D.N.Y. June 15, 2006) ................6, 8, 9

**Cases**                                                                                          **Pages**

Wayne v. United States,
   115 U.S. App. D.C. 234, 318 F.2d 205, 212 (CADC 1963) (Burger, J.)...................................19

Wesley v. Correction Officer Badge # 9417,
   05 Civ. 5912 (HB), 2008 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 2, 2008)...................................12

Westinghouse Elec. Corp. v. NYC Transit Auth.,
   735 F.Supp. 1205 (SDNY 1990) .................................................................................. 14-15

Weyant v. Okst,
   101 F.3d 845 (2d Cir. 1996)...................................................................................................22

Whren v. United States,
   517 U.S. 806 (1996)................................................................................................................25

Willgetodt v. Hohri,
   953 F. Supp. 557 (S.D.N.Y. 1997) ...........................................................................6, 7, 10, 11

Williams v. Smith,
   781 F.2d 319 (2d Cir. 1986)...................................................................................................16

Winston v. Mediafare Entertainment Corp.,
   777 F.2d 78 (2d Cir. 1985).....................................................................................11, 12, 13, 14

Wright v. Smith,
   21 F.3d 496 (2d Cir. 1994).....................................................................................................16

**Statutes**

42 U.S.C. § 1983...................................................................................................1, 2, 16, 29

Fed. R. Civ. P. 56(e) .........................................................................................................15

Fed R. Civ. P. 58................................................................................................................3, 4

C.P.L.R. 2104......................................................................................................................7

Mental Hygiene Law § 9.41...........................................................................................23, 24

N.Y. Gen. Mun. Law § 50-e ..............................................................................................28

N.Y. Gen. Mun. Law 50-i .................................................................................................28

N.Y. Gen. Mun. Law 50-e(l)(b).........................................................................................28

**Pages**

**Statutes**

N.Y. Gen. Mun. Law 50-i(1)(a) ..................................................................28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MAXINE VESTERHALT,

                                        Plaintiff,                    07 Civ. 02142 (MGC)

                -against-

THE CITY OF NEW YORK, POLICE OFFICER BAHIR
MUSTAFA, Shield No. 8703, DETECTIVE THOMAS
HOURICAN, Shield #7555, DETECTIVE ROBERT
YAEGER, Shield #5676, DETECTIVE TRACY
KUPINSKI, Shield #6863, DETECTIVE THOMAS
DRISCOLL Shield #7187, and LIEUTENANT RUEL
STEPHENSON, 28th Precinct,

                                        Defendants.
------------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO
ENFORCE SETTLEMENT OR IN THE
ALTERNATIVE FOR SUMMARY
JUDGMENT**

## PRELIMINARY STATEMENT

Plaintiff Maxine Vesterhalt brings this action pursuant to 42 U.S.C. § 1983 alleging that

she was deprived of her civil rights by the City of New York, Bahir Mustafa, Thomas Hourican,

Robert Yaeger, Tracyann Kupinski, Thomas Driscoll and Ruel Stephenson ("City Defendants").

See Defendants' 56.1 at ¶¶ 1-4.  Specifically, plaintiff claims false arrest, excessive force,

unreasonable search of plaintiff's residence, trespass, and assault and battery as against City

defendants. Id. at ¶ 4.

Defendants City of New York, Bahir Mustafa, Thomas Hourican, Robert Yaeger,

Tracyann Kupinski, Thomas Driscoll and Ruel Stephenson submit this memorandum of law in

support of their motion to enforce the settlement agreement entered into between plaintiff

Maxine Vesterhalt and defendants on November 12, 2008 and subsequently signed by plaintiff, on the grounds that the parties reached an agreement to resolve plaintiff Vesterhalt's claims that plaintiff signed and is consequently bound by its terms, despite the fact that plaintiff Vesterhalt later "changed her mind." Accordingly, the settlement agreement should be enforced.

In the alternative, should the Court choose not to enforce the settlement agreement, defendants City of New York, Bahir Mustafa, Thomas Hourican, Robert Yaeger, Tracyann Kupinski, Thomas Driscoll and Ruel Stephenson move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) plaintiff cannot maintain any claim of excessive force, (2) defendants Mustafa, Hourican, Yaeger, Kupinski, Driscoll and Stephenson's entry was justified by the emergency circumstances exception to the warrant requirement, (3) plaintiff's false arrest claim should be dismissed because defendants' confinement was privileged, (4) plaintiff Maxine Vesterhalt's claims under New York state law should be dismissed for failure to comply with conditions precedent to suit, and (5) plaintiff fails to state a claim under 42 U.S.C. § 1983 against defendant City of New York. Accordingly, City Defendants submit that the complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[1]

Plaintiffs Tyree Davis, Elizabeth Elohim, and Maxine Vesterhalt commenced this action by filing a complaint under docket number 07 Civ. 2142 on or about March 13, 2007 and an

---

[1] The Court is respectfully referred to Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated June 24, 2009, which is being submitted concurrently herewith for the facts relevant to defendants' motion for summary judgment. The following Statement of Facts is submitted for purposes of defendants' motion to enforce the settlement agreement with plaintiff Vesterhalt.

amended complaint on or about December 7, 2007.  See Declaration of Philip S. Frank, dated June 24, 2009 (hereinafter "Frank's Decl."), ¶ 2.  Since the commencement of this lawsuit, plaintiffs have been represented by Anthony C. Ofodile, Esq.  Id. at ¶ 3.

On March 25, 2008, plaintiffs' counsel made an initial settlement demand to the undersigned of $300,000: $75,000 for plaintiff Vesterhalt, $100,000 for plaintiff Davis, and $125,000 for plaintiff Elohim.  Id. at ¶ 4.  On April 2, 2008, Mr. Ofodile lowered plaintiff Vesterhalt's demand from $75,000 to $60,000.  Id. at ¶ 5.  The following day, on April 3, 2008, plaintiff's counsel made a global settlement counter demand of $225,000 for all three plaintiffs including Ms. Vesterhalt.  Id. at ¶ 6.  On April 16, 2008, pursuant to Rule 68 of the Fed. R. Civ. P., counsel for defendants made an offer of $5,001 to plaintiff Vesterhalt, $10,001 to plaintiff Elohim, and $5,001 to plaintiff Davis.  Id. at ¶ 7.  On August 28, 2008, counsel for plaintiffs made a demand of $50,000 for plaintiff Vesterhalt, $75,000 for plaintiff Davis, and $100,000 for plaintiff Elohim, totaling $225,000.  Id. at ¶ 8.

On September 23, 2008, plaintiffs Vesterhalt, Elohim, and Davis all appeared with their counsel, Mr. Ofodile at a settlement conference with counsel for defendants before the Honorable Debra C. Freeman.  Id. at ¶ 9.  Plaintiff Vesterhalt was present during the entire settlement conference, and engaged in the settlement discussions with her attorney present.  Id. at ¶ 10.  Not once during the entire settlement conference did plaintiff Vesterhalt indicate to counsel for defendants or to the Court that her attorney, Mr. Ofodile, did not have authority to settle the case on her behalf nor did she state to counsel for defendants or to the Court that her attorney's authority to settle the case was restricted in any way.  Id.

By Order dated September 26, 2008, the Honorable Miriam Goldman Cedarbaum set a jury trial for the case to begin on December 8, 2008.  Id. at ¶ 11.  On October 3, 2008, pursuant

to Rule 68 of the Fed. R. Civ. P. counsel for defendants made an offer of $50,001 to plaintiff Elohim. Id. at ¶ 12. By email dated October 8, 2008, counsel for plaintiff Elohim accepted defendants' Rule 68 offer of judgment of $50,001. Id. at ¶ 13.

On November 12, 2008, counsel for defendants and counsel for plaintiffs entered into an oral agreement to settle the matter in the amount of $27,500 for plaintiff Vesterhalt, $40,000 for plaintiff Davis, and $40,000 in attorneys fees related to plaintiff Elohim's acceptance of the Rule 68 offer of judgment of $50,001. Id. at ¶ 14. Counsel for defendants memorialized the settlement agreement with plaintiffs in writing and sent the settlement paperwork to counsel for plaintiff by letter dated November 14, 2008. Id. at ¶ 15. By letter dated November 14, 2008, counsel for defendants informed the Court on behalf of all the parties that the action settled on November 12, 2008 and that the Stipulation and Order of Settlement and Discontinuance was to be submitted to the court upon execution. Id. at ¶ 16. Furthermore, the letter stated that, "Because of the settlement, the parties respectfully request that the trial date and all due dates for pre-trial submissions be cancelled." Id.

By letter dated February 3, 2009, counsel for plaintiffs, Mr. Ofodile, informed the Court that, "All three Plaintiffs, Tyree Davis, Elizabeth Elohim and Maxine Vesterhalt had agreed to the settlement of this case after protracted negotiations." Id. at ¶ 17. Moreover, Mr. Ofodile declared that, "all [the plaintiffs] signed the settlement papers" and that "Ms. Vesterhalt also signed her papers" and "executed" the General Release and Affidavit of No Liens. Id. However, the following day, Ms. Vesterhalt asked that counsel hold onto the settlement papers because "she had changed her mind about settling for the amount she agreed to." Id. By signing the General Release, plaintiff Vesterhalt agreed to release defendants from any claims alleged in the

complaint in consideration of the total payment to plaintiff of $27,500 by the City of New York. Id. at ¶ 18.

Based on the foregoing, it is clear that a settlement agreement was reached between plaintiff Vesterhalt and the defendants in the amount of $27,500. The parties reached an agreement on November 12, 2008 and the conduct thereafter was consistent with that agreement. In fact, plaintiff signed and executed the written settlement agreement with defendants. Accordingly, defendants respectfully request that the Court enforce the settlement agreement that was reached between plaintiff Vesterhalt and defendants.

## ARGUMENT

### POINT I

**THE PARTIES REACHED A BINDING, ENFORCEABLE SETTLEMENT AGREEMENT TERMINATING THIS ACTION**

In the case at bar, the settlement agreed to by plaintiff Maxine Vesterhalt and defendants was arrived at freely, fairly, and with the apparent acquiescence of all involved. Accordingly, the settlement agreement must be enforced as a binding, enforceable contract between the parties.

**A.    The Settlement Agreement is Enforceable Because it was Memorialized in Writing and Signed by Plaintiff Vesterhalt**

The settlement agreement entered into between defendants and plaintiff Vesterhalt is a binding contract because, *inter alia*, it was reduced to writing and signed by plaintiff. See Frank's Decl. at ¶ 17. A settlement agreement is a contract that is interpreted according to general principles of contract law. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). Once entered into, the contract is binding and conclusive. Powell v. Omnicom, 497

F.3d 124, 128 (2d Cir. 2007)(citing Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989)). When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect. United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994). In fact, "'the Court must be careful to guard against the possibility that parties will seek to manipulate settlements to gain strategic advantage, settling and unsettling litigation to suit their immediate purposes.'" Walker v. City of New York, No. 05 Civ. 0004 (JBW)(JMA), 2006 U.S. Dist. LEXIS 34345, at *18 (E.D.N.Y. June 15, 2006)(quoting Media Group, Inc. v. HSN Direct Int'l, Ltd., 202 F.R.D. 110, 112 (S.D.N.Y. 2001)).

Moreover, this Court not only has the power to enforce a settlement agreement reached in a case that was pending before it, but "it is this Court's *duty* to 'enforce a settlement agreement which it ha[s] approved.'" Walker, 2006 U.S. Dist. LEXIS 34345, at *16 (quoting Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974)); see also Vari-O-Matic Machine Corp. v. N.Y. Sewing Machine Attachment Corp., 629 F. Supp. 257, 258 (S.D.N.Y. 1986) (it is the Court's duty to enforce settlement agreements in a case pending before it). Furthermore, as Your Honor has previously noted, "[s]ettlement agreements are strongly favored in New York, and may not be lightly cast aside...[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." Willgetodt v. Hohri, 953 F.Supp. 557, 560 (S.D.N.Y. 1997). Absent a clear showing of fraud, collusion, mistake, or accident, a settlement agreement should be deemed presumptively valid and upheld by the Court. Id.

In the instant case, it is undisputed that plaintiff Vesterhalt signed the written settlement agreement entered into between the parties. See Frank's Decl. at ¶ 17. Counsel for defendants and counsel for plaintiff Vesterhalt entered into an oral agreement to settle the matter on November 12, 2008 and that the settlement agreement was memorialized in writing and sent

to counsel for plaintiff by letter dated November 14, 2008. Id. at ¶¶ 14-15. By letter dated February 3, 2009, counsel for plaintiff Vesterhalt, Mr. Anthony C. Ofodile, informed the Court that plaintiff Vesterhalt signed the written settlement agreement. Id. at ¶17. Mr. Ofodile stated that plaintiff signed and "executed" the General Release, memorializing the settlement agreement. Id. By signing the General Release, plaintiff Vesterhalt agreed to release defendants from any claims alleged in the complaint in consideration of the total payment to plaintiff of $27,500 by the City of New York. Id. at ¶ 18. Plaintiff's signing of the settlement agreement created a written, enforceable and binding contract between the parties to settle the matter. Although counsel for plaintiff alleges in his letter dated February 3, 2009 that plaintiff Vesterhalt "changed her mind about settling for the amount she agreed to[,]" id. at ¶ 17, as Your Honor has noted, "[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." See Willgetodt, 953 F.Supp. at 560.

**B.    The Settlement Agreement is Enforceable Under Either New York State or Federal Law**

The instant settlement agreement is binding and enforceable regardless of whether federal or New York State law governs the case at bar. Under New York Law, a writing signed by the party to be bound creates a valid and binding stipulation of settlement. NY CLS CPLR R 2104; see Silas v. City of New York, 536 F. Supp. 2d 353, 355-356 (S.D.N.Y. 2008)("Under C.P.L.R. 2104 there are three ways to create a valid and binding stipulation of settlement. Two of those procedures require a writing, either a stipulation signed by the party to be bound or his counsel, or a stipulation that has been reduced to an order, signed by the judge and entered.")(internal citations omitted). Moreover, New York State appellate courts have held that "letters acknowledging the settlement and signed by the plaintiff's attorney satisfy the requirement of a subscribed writing." Gaglia v. Nash, 8 A.D.3d 992, 993 (N.Y. App. Div. 4th Dep't

7

2004)(quoting Morrison v. Bethlehem Steel Corp., 75 A.D.2d 1001 (N.Y. App. Div. 4th Dep't 1980). Here, it is undisputed that plaintiff Vesterhalt signed the settlement agreement, making it binding and enforceable pursuant to C.P.L.R. 2104. Moreover, counsel for plaintiff submitted a signed letter to the court dated February 3, 2009 stating that, "All three Plaintiffs, Tyree Davis, Elizabeth Elohim and Maxine Vesterhalt had agreed to the settlement of this case after protracted negotiations." See Frank's Decl. at ¶ 17. Accordingly, plaintiff's signed letter to the Court acknowledging the settlement further satisfies the New York State law requirement that the settlement agreement be signed.

Moreover, the settlement agreement is binding and enforceable under federal law because counsel for plaintiff had both actual and apparent authority to settle the matter. The Second Circuit has made clear that, "'if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld.'" United States v. Int'l Brotherhood of Teamsters, 986 F.2d 15, 19 (2d Cir. 1993)(citing Fennell, 865 F.2d at 501); Walker, 2006 U.S. Dist. LEXIS 34345, at *8, *14 (citing In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996)); see also Thomson v. Rocco, 2004 U.S. Dist. LEXIS 10512 (S.D.N.Y. June 8, 2002) (citing Foster v. City of New York, 2000 U.S. Dist. LEXIS 1251, at *3 (S.D.N.Y. Feb. 7, 2000)). The exercise of either actual or apparent authority by the attorney will result in a valid and enforceable agreement. Teamsters, 986 F.2d at 19; Fennel v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989)(citing Int'l Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 52 (2d Cir. 1979)); Walker, 2006 U.S. Dist. LEXIS 34345, at *14. Of course, the ultimate decision whether to settle rests with the client. See Artha, 91 F.3d at 329; Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 247 (E.D.N.Y. 2002). Nevertheless, "due to the unique nature of the attorney-client relationship and the longstanding policy favoring settlement, courts

presume that an attorney who enters into a settlement agreement has authority to do so." Thompson v. Rocco, 02 Civ. 0635, 02 Civ. 9561(JCF), 2004 U.S. Dist. LEXIS 10512 (S.D.N.Y. June 8, 2002)(citing Foster, 2000 U.S. Dist. LEXIS 1251, at *3). The burden is on the party challenging the settlement agreement to demonstrate that the attorney lacked authority. Walker, 2006 U.S. Dist. LEXIS 34345, at *8-*9 (citing Artha, 91 F.3d at 329, which states that "any party challenging an attorney's authority to settle the case ... bear[s] the burden of proving by affirmative evidence that the attorney lacked authority") (emphasis added); Conway, 236 F. Supp. 2d at 247; Gilbert v. United States, 479 F.2d 1267, 1268-69 (2d Cir. 1973); Foster, 2000 U.S. Dist. LEXIS 1253, at *3. That burden is "not insubstantial." Teamsters, 986 F.2d at 20; Walker, 2006 U.S. Dist. LEXIS 34345, at *8.

In the instant action, the evidence clearly indicates that plaintiff's counsel possessed both actual and apparent authority to reach a settlement with defendants, either of which is sufficient to uphold the settlement. As an initial matter, counsel for plaintiff, Anthony C. Ofodile Esq., possessed actual authority to settle the matter on behalf of plaintiff Vesterhalt. "Counsel's actual authority 'may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act.'" Teamsters, 986 F.2d at 20 (quoting Edwards v. Born, Inc., 792 F.2d 387, 391 (3d Cir. 1986)). Here, Mr. Ofodile stated in his letter to the Court dated February 3, 2009, that plaintiff Vesterhalt "agreed to the settlement of this case after protracted negotiations." See Frank's Decl. at ¶ 17. Ms. Vesterhalt went so far as to sign the settlement paperwork, evidencing her grant of actual authority to her counsel to settle the matter. Id. Counsel for plaintiff indicated in his letter that it was only after a passage of time that Ms. Vesterhalt decided to renege on her decision to settle the matter. Id. However, Your Honor has previously noted that, "[s]ettlement agreements are strongly favored in New York, and may not

9

be lightly cast aside...[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." Willgetodt v. Hohri, 953 F.Supp. 557, 560 (S.D.N.Y. 1997). Accordingly, in the instant action, the settlement agreement should be enforced because it is clear that plaintiff Vesterhalt provided actual settlement authority to her attorney, Mr. Ofodile.

Moreover, counsel for plaintiff also had apparent authority to settle the above-referenced matter on behalf of his client, Ms. Vesterhalt. Apparent authority in this context is "the power to affect the legal relations of [the client] by transactions with third persons, professedly as agent for the [client], arising from and in accordance with the [client's] manifestations to such third persons." Teamsters, 986 F.2d at 20 (quoting Restatement Second of Agency § 26 Comment C (1958)). Apparent authority may only arise from the conduct or representation of the client toward the third party, not that of the attorney. See id. However, if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt this authority, then the settlement will be upheld. See Conway 236 F. Supp. 2d at 247. In the instant action, on September 23, 2008, Ms. Vesterhalt appeared at a settlement conference before the Honorable Debra C. Freeman with her attorney, Mr. Ofodile. See Frank's Decl. at ¶ 9. Ms. Vesterhalt did not indicate to counsel for defendants that her attorney did not have authority to settle the case on her behalf nor did she state to counsel for defendants that her attorney's authority to settle the case was restricted in any way. Id. at ¶ 10. Rather she actively engaged in the settlement discussions with her attorney present, indicating to counsel for defendants that her attorney had authority to settle the matter on her behalf. Id. Moreover, plaintiff Vesterhalt's counsel engaged in numerous settlement discussions with the undersigned. Id. at ¶¶ 4-8, 14. Accordingly, counsel for plaintiff had apparent authority to settle the matter, and thus the Court should enforce the settlement agreement entered into between the parties.

Absent "cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident," a party should not be relieved of the consequences of a validly negotiated agreement they entered. Willgetodt, 953 F. Supp. at 560. There is no cause to invalidate the settlement agreement in the instant case.

**C.      Assuming *Arguendo* the Absence of a Formalized Signed Writing Memorializing the Settlement Agreement, the Settlement Entered Into Orally is Still Enforceable**

The settlement agreement entered into by counsel for the parties orally on November 12, 2008 is enforceable standing on its own. Within the Second Circuit, courts utilize four factors in determining whether an oral agreement is enforceable in the absence of a fully-executed settlement agreement: (1) whether either party communicated an intent not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all the terms of the settlement had been agreed upon; and (4) whether the agreement is the type of contract that is normally reduced to writing. Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 323 (2d Cir. 1997); Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d Cir. 1985). None of the factors, standing alone, is dispositive of the enforceability of an agreement. Alvarez v. City of New York, 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2001). While no single factor in the Winston analysis is dispositive, the Second Circuit has also stated, in the context of a binding preliminary commitment, that the first or "Express Reservation" factor is the most important. Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621 (KMW) (AJP), 2005 U.S. Dist. LEXIS 11130, at *25 (S.D.N.Y. June 9, 2005)(citing Krauth v. Executive Telecard, Ltd., 890 F. Supp. 269, 293 (S.D.N.Y. 1995) (citations omitted)). Defendants respectfully submit that each of these factors favors enforcing the settlement agreement reached in this matter.

As for the first <u>Winston</u> factor, neither party communicated any intent not to be bound in the absence of a formally executed agreement. Indeed, by letter dated November 14, 2008, defendants reported to the Court on behalf of all the parties that the parties had reached a settlement prior to receiving a formally executed writing from plaintiff. <u>See</u> Frank's Decl. at ¶ 16. Furthermore, counsel for plaintiff's letter to the Court dated February 3, 2009 stated that plaintiff Vesterhalt "agreed to the settlement of this case after protracted negotiations" and even signed the settlement agreement. <u>Id</u>. at ¶ 17. Nowhere in plaintiff's counsel's letter did he note an express reservation not to be bound to the settlement in the absence of a formally executed agreement. <u>Id</u>. To the contrary, Mr. Ofodile indicated that plaintiff Vesterhalt clearly agreed to settle the matter but subsequently "changed her mind about settling for the amount she agreed to." <u>Id</u>. As such plaintiff has failed to establish (as is her burden) a lack of intent to be bound under the first and most weighty of the <u>Winston</u> criteria.

Defendants also submit that they have partially performed the terms of the agreement. The second prong of the <u>Winston</u> analysis is "whether there has been partial performance of the contract." <u>Winston</u>, 777 F.2d at 80. Courts have found this second factor to be the least important in the <u>Winston</u> analysis. <u>Conway v. Brooklyn Union Gas Co.</u>, 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002). First, at least one court has found that preparing and finalizing formal settlement paperwork constitutes partial performance of a settlement agreement. <u>Wesley v. Correction Officer Badge # 9417</u>, 05 Civ. 5912 (HB), 2008 U.S. Dist. LEXIS 2, *8-9 (S.D.N.Y. Jan. 2, 2008)(finding that sending settlement paperwork to a *pro se* plaintiff was sufficient to constitute partial performance.) By letter dated November 14, 2008, defendants submitted to plaintiff the formal settlement paperwork. Second, defendants' detrimental reliance on the settlement in principle, allowing the trial date to pass, militates toward enforcing the settlement.

See Monaghan v. SZS 33 Assocs., 73 F.3d 1276, 1283 (2d Cir. 1996) (enforcement of a settlement was proper where plaintiff allowed her trial date to pass in reliance upon settlement agreement); Rhulen Agency, Inc. v. Gramercy Brokerage, Inc., 106 A.D.2d 725, 728 (N.Y. 1984) (party opposing enforcement of settlement agreement may be estopped from doing so where party seeking enforcement has detrimentally relied upon the agreement).  In the instant case, by Order dated September 26, 2008, Your Honor set the jury trial for the case on December 8, 2008.  See Frank's Decl. at ¶ 11.  However, reliance upon the settlement agreement that the parties reached caused defendants to let the trial date pass.

With respect to the third Winston factor, defendants submit that the material terms of the settlement had been agreed upon.  Indeed, counsel for plaintiff stated in his letter to the Court dated February 3, 2009 that plaintiff "agreed to the settlement of the case" and further executed the settlement paperwork by signing the agreement.  Id. at ¶ 17.

The final Wintson factor concerns whether this particular contract is usually committed to writing, generally involving an evaluation of the "complexity of the transaction".  777 F.3d at 83; see also Hostcentric, 2005 U.S. Dist. LEXIS 11130, at *32 ("Since the Winston test is designed to determine if a settlement agreement is binding absent a formally executed agreement, it would be a strange test if the fourth factor always required finding no agreement on the ground that settlement agreements usually are written.").  Defendants submit that the settlement agreement at issue here, involving an exchange of money and releases was not so complex as to suggest that the parties would be unable to bind themselves without a formal writing.  By contrast, Winston involved a settlement agreement to be paid over the course of several years based upon a percentage of earnings, which the Second Circuit determined was sufficiently complex as to indicate a writing may have been intended.  777 F.3d at 83 (citing

Reprosystem, B.V. v. SCM Corp., 727 F.2d 257 (2d Cir. 1984) (transaction involving $4 million sale of six companies that had been incorporated under the laws of five countries was the type of agreement that generally required a writing)).   As such, plaintiff has also failed to meet her burden with respect to the fourth element of the Winston analysis, and the Court should find that the parties intended to be bound by their oral agreement.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT[2]

The purpose of summary judgment is to expedite civil actions by eliminating from the trial calendar those claims that can be properly resolved as a matter of law.  Summary judgment is appropriate where no genuine issue of material fact exists.  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'"  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Furthermore, in Westinghouse Elec. Corp. v. N.Y.C. Transit Auth., the Court stated that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims … thereby permitting courts to avoid 'protracted, expensive and harassing trials.'"  735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (citing Celotex v. Catrett, 477 U.S. 317 (1986)).  Furthermore, "the substantive law governing the case will identify those facts that are material, and only disputes over facts

---

[2] The following section is for purposes of defendants' motion for summary judgment.  This Standard of Review does not apply to defendants' motion to enforce the settlement agreement.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Dukes v. City of New York, 879 F. Supp. 335, 339 (S.D.N.Y. 1995).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id.

To survive a motion for summary judgment, the non-moving party must do more than present evidence that is merely colorable, conclusory, or speculative.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  Additionally, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Phillips v. Eppolito et al., 02 CV 5662 (DLC), 2004 U.S. Dist. LEXIS 18565, *5 (S.D.N.Y. 2004).  The non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Velasquez v. Bankich, 97 CV 8424 (AKH), 2000 U.S. Dist. LEXIS 15412, at *4 (S.D.N.Y. 2000).  He must offer evidence demonstrating there exists a genuine issue of fact that must be decided by a fact finder.  Here, the Court should grant summary judgment in favor of defendants because no genuine issue of material fact exists to support plaintiffs' claims.

**POINT II**

**PLAINTIFF CANNOT MAINTAIN ANY CLAIM OF EXCESSIVE FORCE.**

Should the court decide not to grant defendants' motion to enforce the settlement agreement, plaintiff Maxine Vesterhalt's claim of excessive force must be dismissed as a matter of law.  As a threshold matter, defendants respectfully note that plaintiff Vesterhalt does not allege that Police Officer Bahir Mustafa, Detective Thomas Hourican, Detective Tracyann

Kupinski, Detective Robert Yaeger, Detective Thomas Driscoll, or Lieutenant Ruel Stephenson were involved in the alleged use of force. It is well established that § 1983 imposes liability only upon a defendant who personally "subjects, or causes to be subjected" any person to the deprivation of any federal right. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978)); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997). A successful plaintiff must demonstrate "a tangible connection between the acts of a defendant and the injuries suffered." Bass, 790 F.2d at 263.

Here, plaintiff Vesterhalt cannot establish that defendants Mustafa, Hourican, Kupinski, Yaeger, Driscoll, or Stephenson were personally involved in the alleged use of force against her. Plaintiff Vesterhalt alleges that when she turned the knob to the apartment door to let officers in, the officers slammed the door, and the door hit her. See Defendants' 56.1 Statement at ¶ 15. She testified that she fell down, and an officer grabbed her and threw her to the floor face first. Id. According to her testimony, the officer put his boot in her neck, and she was hit in the back of her head causing there to be a hole in her head, although she did not know it at the time. Id. at ¶¶ 15, 21. However, Maxine Vesterhalt did not see what the officer looked like who grabbed her, and she does not know his name. Id. at 16. In fact, she did not see what any of the officers looked like who entered the apartment. Id. Moreover, she does not know who any of the individual defendants are. Id. Furthermore, Lieutenant Stephenson and Officer Mustafa were not even in the apartment during the time that ESU officers were in the apartment, which is when the alleged excessive force took place. Id. at 23. Thus, any claims of excessive force against

defendants Mustafa, Hourican, Kupinski, Yaeger Driscoll, and Stephenson must be dismissed because plaintiff Vesterhalt cannot prove that any of them were personally involved in the alleged use of excessive force.

Furthermore, plaintiff Vesterhalt did not seek any medical attention for her alleged injuries. Id. at 21. To sustain a claim for excessive force, plaintiff must establish through evidence, that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003)(quoting Walsh, 194 F.3d at 50). "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a [person's] constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). A plaintiff may establish excessive force if he can demonstrate that the amount of force used was more than *de minimis*. Perkins, 285 F. Supp. 2d at 283 (court dismissing excessive force claim where plaintiff submitted no evidence of injuries and medical records established that any force used was *de minimis*); Cunningham v. Rodriguez, 01 Civ. 1123 (DC), 2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002) (court finding blows to back and face were *de minimis*); Bove v. City of New York, 98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999) (court granting summary judgment for defendants on excessive force claim where objective evidence of hospital records did not support plaintiff's claims but showed force used was *de minimis*).

Here, plaintiff Vesterhalt cannot prove through any evidence that she suffered any injury or that the force was excessive because she never sought medical treatment for her alleged injuries. Although the severity of plaintiff's injuries is not determinative, they are relevant to the consideration of whether the force used was reasonable. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Here, plaintiff cannot establish that she sustained any injuries at all, let alone anything

other than *de minimus* injuries because there are no medical records since she did not seek any medical treatment. Therefore, as plaintiff Vesterhalt has failed to demonstrate that she was assaulted by any of the individual defendants or that she, in fact, sustained any injuries at all from any police conduct, the Court should conclude that plaintiff has failed to establish a claim of excessive force in violation of plaintiff's constitutional rights.

**POINT III**

**DEFENDANTS HOURICAN, KUPINSKI, YAEGER, DRISCOLL, MUSTAFA AND STEPHENSON'S ENTRY WAS JUSTIFIED BY THE EMERGENCY CIRCUMSTANCES EXCEPTION TO THE WARRANT REQUIREMENT**

Plaintiff claims that the individual defendants violated her rights by unlawfully entering her apartment without a warrant on March 12, 2006. However, plaintiff's claims relating to the warrantless entry to the apartment cannot survive a motion for summary judgment because the entry and subsequent search were justified by exigent circumstances, namely a well-founded concern in avoiding the serious injury of an occupant of the apartment. It is a "' basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (quoting Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (some internal quotation marks omitted)). Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions, including entry onto private property under exigent circumstances. Flippo v. West Virginia, 528 U.S. 11, 13, 120 S. Ct. 7, 145 L. Ed. 2d 16 (1999) (per curiam); Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); see also Mincey v. Arizona, 437 U.S. 385, 393-394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)("Warrants are

generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.").

One such exigency which may justify a warrantless entry is the need to "render emergency aid and assistance to a person whom [officers] reasonably believe to be in distress and in need of that assistance." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1988). The Supreme Court has recently reiterated its position that "the need to assist persons who are seriously injured or threatened with such injury" is one circumstance that justifies a warrantless entry to a private home. Brigham City v. Stuart, 126 S. Ct. 1943 (U.S. 2006). As the Supreme Court has stated, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincey, 437 U.S. at 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (quoting Wayne v. United States, 115 U.S. App. D.C. 234, 318 F.2d 205, 212 (CADC 1963) (Burger, J.)); see also Tyler, at 509, 98 S. Ct. 1942, 56 L. Ed. 2d 486. Accordingly, it is clear that law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. Mincey, supra, at 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290; see also Georgia v. Randolph, 547 U.S. 103, 118, 126 S. Ct. 1515, 1525, 164 L. Ed. 2d 208 (2006)("It would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur")).

In the case at bar, the undisputed facts gave the NYPD officers a reasonable basis to believe that there was an emotionally disturbed person in the apartment who posed an imminent threat to the safety of himself and others. On March 12, 2006, a 911 call was made by a male caller who stated that there was a male in the lobby of 207 West 110th Street going crazy and

breaking items with a bat. <u>See</u> Defendants' 56.1 at ¶ 6. The call was made at 05:06 military time (5:06 a.m. civilian time), and the caller stated that he could hear and see the male at the location. <u>Id</u>. Police Officer Mustafa and his partner responded to the building because they were told by their radio dispatcher of the 911 call. <u>Id</u>. at 10. As courts have noted, a 911 call, in itself, is an indication of an emergency situation. <u>See</u> <u>United States v. Holloway</u>, 290 F.3d 1331, 1339 (11th Cir. 2002); <u>United States v. Richardson</u>, 208 F.3d 626, 630 (7th Cir. 2000)(911 call a "universally recognized....means through which police...learn that there is someone in a dangerous situation who urgently needs help.").

Officer Mustafa saw broken glass in the lobby of the building and heard very loud screaming, confirming the report made in the 911 call. <u>See</u> Defendants' 56.1 at ¶ 10. He and his partner went to the apartment where they could hear the screaming. <u>Id</u>. Officer Mustafa knocked on the door, and identified himself as the police. <u>Id</u>. Officer Mustafa said that the police needed the door opened to make sure everyone was okay, however plaintiff refused the police entry into the apartment. <u>Id</u>. at ¶ 11. When Lieutenant Stephenson arrived to the scene, officers at the location explained to him that an individual was observed breaking items with an object and ran into the apartment and was possibly armed. <u>Id</u>. at ¶ 12. A member of the NYPD spoke to a neighbor on the same floor as the apartment of Tyree Davis. <u>Id</u>. The neighbor reported he saw an emotionally disturbed person run into the apartment of Tyree Davis. <u>Id</u>. Accordingly the police had a reasonable basis to believe that an emotionally disturbed person who was possibly armed was inside the apartment and was a threat to the safety of himself and to others.

The Emergency Services Unit ("ESU") was notified to respond to the incident because of the report of a violent emotionally disturbed person ("EDP). <u>Id</u>. at ¶ 14. When ESU officers

arrived, Lieutenant Stephenson explained to them that here was a transmission over the radio about an individual breaking things, that the individual fled into this particular apartment, that police could not gain entry into the apartment, that the person was armed and that the police were not sure who was inside the apartment with the individual. Id. The ESU team consisted of Detectives Thomas Hourican, Tracyann Kupinski, Robert Yaeger and Thomas Driscoll. Id. at ¶ 15.

According to his own admission, when Tyree Davis arrived to his building after a party, he had an anxiety attack because he believed that the building was trying to kill him. Id. at ¶ 8. Tyree Davis yelled and screamed at the top of his lungs outside the building. Id. He broke two light bulbs attached to the front of the building. Id. Tyree Davis prayed at the top of his lungs outside his building for approximately five to ten minutes. Id. at ¶ 9. He entered his apartment and was still praying very loudly and yelling at the top of his lungs. Id. While inside his apartment, Tyree Davis prayed at the top of his lungs for 10 to 15 minutes. Id. According to medical records from the date of the incident, Tyree Davis's daughter told doctors that he "came home very angry and was yelling." Id. Tyree Davis threw up two times while in the hospital. Id. at ¶ 24. According to the St. Luke's-Roosevelt Hospital Center medical records, Tyree Davis vomited because of alcohol. Id. He reported to the treating physician that he drank too much that night. Id.

Under these circumstances, it was not unreasonable for the individual officers to believe that the occupants of the apartment might have been injured or threatened with injury or might otherwise need emergency assistance or protection. A 911 call reported that a man was acting irrationally breaking items in the lobby of the building with a bat. Furthermore, Officers heard Tyree Davis yelling and screaming in his apartment. A neighbor on the same floor as

Tyree Davis told officers that he saw an emotionally disturbed person enter his apartment. Tyree Davis was possibly armed with a bat, shards of glass or another weapon and could have seriously injured himself or others in the apartment due to his irrational behavior. According to his own testimony, Tyree Davis was breaking items in the lobby of his building in the early morning hours of March 12, 2006 and was screaming at the top of his lungs both outside his building and inside his apartment. Because Tyree Davis refused to open the door, officers had no way of verifying whether Tyree Davis was going to seriously injure himself or others inside the apartment. For these reasons, the entry and search of plaintiff's apartment on March 12, 2006, was justified by exigent circumstances.

## POINT IV

### PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE DEFENDANTS' CONFINEMENT WAS PRIVILEGED.

To state a claim of false arrest, a plaintiff must show: "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003)(quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003). In other words, "'a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'" Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Plaintiff Maxine Vesterhalts's cause of action for false arrest/imprisonment lacks merit because defendants' confinement of her was privileged pursuant to Mental Hygiene Law § 9.41 and because it was based on probable cause. Plaintiff Maxine Vesterhalt alleges that she was

handcuffed and falsely arrested and detained during the forty minutes that police officers were inside the apartment. However, because the confinement of Tyree Davis during that time period was privileged under Mental Hygiene Law § 9.41 and based upon probable cause, the confinement of Maxine Vesterhalt was also privileged. Accordingly, Maxine Vesterhalt's claim for false arrest must be dismissed as a matter of law.

**A.     Defendants' confinement of plaintiff was privileged pursuant to Mental Hygiene Law § 9.41.**

New York State Mental Hygiene Law § 9.41 provides in pertinent part "[a]ny ... police officer ... may take into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others". Under the statute, the likelihood of serious harm arises when there is "a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." Mental Hygiene Law § 9.41. "Detention pursuant to this statute does not require proof that the person presents an <u>immediate</u> danger to others." <u>Higgins v. City of Oneonta</u>, 208 A.D.2d 1067, 1069 (N.Y. App. Div. 3d Dep't 1994)(citing <u>Thomas v Culberg</u>, 741 F. Supp. 77, 81, n. 1 (S.D.N.Y. 1990); <u>Project Release v Prevost</u>, 551 F. Supp. 1298, 1305 (E.D.N.Y. 1982))(emphasis added). The Second Circuit "interpreted this provision as imposing 'the same objective reasonableness standard' that is imposed by the Fourth Amendment." <u>Kerman v. City of New York</u>, 374 F.3d 93, 100 (2d Cir. N.Y. 2004). "Under the Fourth Amendment, an officer may seize a person for a psychiatric evaluation if the officer has 'probable cause to believe that the person is dangerous to himself or others.'" <u>Anthony v. City of New York</u>, 2001 U.S. Dist. LEXIS 8923, 29-32 (S.D.N.Y. July 2, 2001) aff'd, 339 F.3d 129 (2d Cir. 2003) (quoting <u>Monday v. Oullette</u>, 118 F.3d 1099, 1102 (6th Cir. 1997). <u>See also Glass v. Mayas</u>, 984 F.2d 55, 57-58 (2d Cir. 1993).

In the case at bar, the officers had a reasonable basis to believe that Tyree Davis was an emotionally disturbed person who was dangerous to himself or to others in the apartment. See Point III, *supra*, for a recitation of the facts that provided officers with a reasonable basis to believe such. The 911 call reporting that a person was acting irrationally and breaking items with a bat in the lobby of a building in the early morning hours of March 12, 2006 alerted officers to an emotionally disturbed person who posed a risk of seriously injuring himself or others. The broken glass that officers saw on site, the screaming that officers heard coming from Tyree Davis's apartment and the neighbor's report to officers that he saw an emotionally disturbed person go into Tyree Davis's apartment gave officers a reasonable basis to believe that an emotionally disturbed person was inside the apartment and posed a violent threat to himself or to others inside the apartment. Tyree Davis's refusal to open the door meant that the police had no way to verify whether Tyree Davis was dangerous to himself or to others. Tyree Davis ran into his apartment possibly armed with a bat, shards of broken glass, or another weapon. Accordingly the police had probable cause to seize Tyree Davis for a psychiatric evaluation under the Fourth Amendment reasonableness standard and pursuant to Mental Hygiene Law § 9.41 because he was acting emotionally disturbed and could be dangerous to himself or to others. Moreover, pursuant to Mental Hygiene Law § 9.41, police officers had probable cause to temporarily seize plaintiff Vesterhalt in the apartment while the officers secured the apartment and ensured the safety of Davis and the others in the apartment, including plaintiff Vesterhalt, against whom Davis potentially posed a danger.

**B.    Defendants' confinement of plaintiff was privileged because it was based on probable cause.**

According to the New York Court of Appeals, an arrest is justified or privileged if it is based on probable cause, which is also a complete defense to a claim for false arrest. Savino,

331 F.3d at 76 (citations omitted); Curry, 316 F.3d at 335(quoting Feinberg v. Saks & Co., 56 N.Y.2d 206, 210 (1982)).    Probable cause is an objective determination based upon the information available to the officer at the time of the arrest; the officer's subjective beliefs and motivations are irrelevant.  Codling v. City of New York, 01 Civ. 2884 (RWS), 2002 U.S. Dist. LEXIS 16547, at *13 (S.D.N.Y. Sept. 5, 2002) (citing Whren v. United States, 517 U.S. 806, 813 (1996); Anderson v. Creighton, 483 U.S. 635, 641 (1987); Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000)); see also  Lowth v. Town of Cheektowage, 82 F.3d 563, 570 (2d Cir. 1996) (Probable cause for an arrest "must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest…..").  Probable cause does not require concrete proof of each element of a crime; it exists where the defendant is "in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense."  Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  As a consequence, the validity of an arrest does not depend upon the ultimate finding of guilt or innocence.  Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 419 (S.D.N.Y. 2002) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).  A probable cause determination "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  Illinois v. Gates, 462 U.S. 213, 245 (1983).

Probable cause may exist, even where based on mistaken information, as long as the police officer acted reasonably and in good faith when relying on that information.  Lee v. City of New York, 00-CV-3181 (JG), 2002 U.S. Dist. LEXIS 13696, at *19 (E.D.N.Y. July 22, 2002)(citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Bulanov v. Town of Lumberland Constable, 00 Civ. 4292 (SAS), 2002 U.S. Dist. LEXIS 1715, at *11 (S.D.N.Y. Feb. 6, 2002)(quoting Bernard, 25 F.3d at 102).  Furthermore, once probable cause has been

established, a police officer is under no duty to "'explore and eliminate every plausible claim of innocence before making an arrest.'" Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002) (quoting Cerrone v. Brown, 246 F.3d 194, 198 (2d Cir. 2001); quoting Martinez v. Simonetti, 202 F.3d 625, 635)); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); Otero v. Town of Southampton. 194 F. Supp. 2d 167, 178 (E.D.N.Y. 2002); Daniels v. City of New York, 03 Civ. 0809 (GEL), 2003 U.S. Dist. LEXIS 19765, at *11 (S.D.N.Y. Nov. 3, 2003).

Furthermore, officers have probable cause to arrest if they receive "information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth…" Daniels v. City of New York, 03 Civ. 0809 (GEL), 2003 U.S. Dist. LEXIS 19765, at *10 (S.D.N.Y. Nov. 3, 2003)(citations omitted); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (arresting officer may rely upon victim's information absent circumstances raising doubts as to victim's veracity); Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)(probable cause exists if information is received from a complaining witness). Even where the witness or victim's information is found to be incorrect, probable cause still exists when the "arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Colon v. City of New York, 60 N.Y.2d 78 (1983)). Generally, probable cause exists if information is received from a complaining witness. Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993).

Finally, the Supreme Court held that a warrantless arrest satisfies the Fourth Amendment as long as there is probable cause that the suspect committed *some* crime. Devenpeck v. Alford, 543 U.S. 146 (2004). There need not be probable cause for the crime articulated by the arresting

officer or even for a crime that is "closely related" to that crime.  Id.  In essence, the Supreme

Court in Devenpeck held that an arrest is lawful, even if the grounds for the arrest turn out to be

baseless, so long as there is some other permissible basis that could have been used for police

action.  Id.

        The issue, therefore, is whether the facts in the possession of defendants at the

time Tyree Davis was arrested were sufficient to establish probable cause for his arrest and for

the brief detention of plaintiff Vesterhalt in the apartment while officers affected Davis's arrest.

The defendant police officers responded to a 911 call that a person was acting crazy and breaking

items in the lobby of the location with a bat.  See Defendants' 56.1 Statement at ¶¶ 6, 10.  When

police officers arrived, they saw broken glass inside and outside the building and heard

screaming from Tyree Davis's apartment, confirming the witness's statements in the 911 call.

Id. at ¶ 10.  A neighbor on the same floor as Tyree Davis reported to the police that he saw an

emotionally disturbed person run into the apartment.  Id. at ¶ 12.  The individual was reported to

be armed with a bat or some other weapon.  Id.  Tyree Davis admitted to having an anxiety

attack outside the building because he believed the building was trying to kill him.  Id. at ¶ 18.

Furthermore, he admittedly broke light bulbs outside the building and yelled and prayed at the

top of his lungs both outside the building and inside the apartment.  Id. at ¶¶ 8, 9.  Moreover,

medical records indicate that Tyree Davis was highly intoxicated that evening and vomited two

times in the Emergency Room due to the alcohol he consumed.  Id. at ¶ 24.  For these reasons,

the police had probable cause to arrest and detain Tyree Davis and to detain plaintiff Maxine

Vesterhalt while they affected plaintiff's arrest.

## POINT V

**PLAINTIFF MAXINE VESTERHALT'S CLAIMS UNDER NEW YORK STATE LAW SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO SUIT.**

Under New York state law, when suing the City or its employees, a timely notice of claim is required pursuant to GML §50-e(1)(b). Because plaintiff Maxine Vesterhalt failed to timely satisfy requisite conditions to suit, her state law claims should be dismissed with prejudice. Under New York law, a Notice of Claim is a condition precedent to bringing an action against a municipality or any of its officers, agents or employees. Gen. Mun. Law §§ 50-e and 50-i(1)(a). New York's General Municipal Law §§ 50-e and 50-i require that plaintiffs asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues. See N.Y. Gen. Mun. Law § 50-e and 50-i. These provisions have been strictly construed by both state and federal courts. Shakur v. McGrath, 517 F.2d 983, 985 (2d Cir. 1975); Bailey v. Tricolla, 94 Civ. 4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 11, 1996); Baez v. New York City Health and Hospitals Corp., 80 N.Y.2d 571, 576 (1992); Phillips v. Village of Frankfort, 31 Misc.2d 815, 220 N.Y.S.2d 171 (Sup. Ct. Herkimer Co. 1961). "A plaintiff's failure to file a notice of claim requires dismissal of pendant state tort claims against the City or its employees in a federal civil rights action." Robinson v. Matos, 97 Civ. 7144 (TPG), 1999 U.S. Dist. LEXIS 5447 (S.D.N.Y. Apr. 16, 1999)(citing Felder v. Casey, 487 U.S. 131, 151, (1988)). Specifically, failure to comply with these requirements requires a dismissal for failure to state a cause of action. Brown v. Metropolitan Transportation Authority,

717 F. Supp. 257, 259 (S.D.N.Y. 1989).  "A plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim."  Clinton v. City of New York, 98 Civ. 3810 (JSM), 1999 U.S. Dist. LEXIS 2145, at *6 (S.D.N.Y. Mar. 2, 1999)(citing Davidson v. Bronx Municipal Hosp., 64 N.Y.2d 59, 61-62 (1984)); Jones v. Trump, 96 Civ. 2995, 96 Civ. 6927 (SAS), 1997 U.S. Dist. LEXIS 7324, at *9 (S.D.N.Y. May 22, 1997).

 Here, plaintiff Maxine Vesterhalt failed to file a Notice of Claim for the incidents alleged in the complaint.  See 56.1 Statement at ¶ 3.  Therefore, because she failed to comply with the applicable statutory requirements, any of her state law claims should be dismissed.

## POINT VI

### PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF NEW YORK.

 To the extent plaintiff Maxine Vesterhalt brings claims against defendant City of New York pursuant to 42 U.S.C. § 1983, her claims should be dismissed for failure to state a claim.  To state a claim under 42 U.S.C. § 1983, a complaint must allege that a person acting under the color of state law committed acts that deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or the law of the United States.  Parrat v. Taylor, 451 U.S. 527, 535 (1984).  In order to hold a municipality liable as a "person" within the meaning of § 1983, the plaintiff must establish that the municipality itself was somehow at fault.  Oklahoma v. Tuttle, 471 U.S. 808, 810 (1985); Monell v. Department of Social Services, 436 U.S. 658, 609-91 (1978).  "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries…"  Second, the plaintiff must establish a causal connection- an "affirmative link"- between the policy and the deprivation of his constitutional rights."  Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d

Cir. 1985) (citing Oklahoma, 471 U.S. at 824 n.8). Therefore, in order to establish municipal liability, plaintiff must demonstrate that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.

To prove the existence of a policy or custom, plaintiff must establish one of the following: (1) a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690; (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of plaintiff's constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)(plurality opinion); or (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion); Sorlucco v. New York City Police Department, 971 F.2d 864, 871 (2d Cir. 1992). If a plaintiff is unable to plead and establish one of the above, municipal liability will not attach.

In the instant case, nowhere in the Amended Complaint does plaintiff Vesterhalt allege and nowhere in the record is there any evidence that (1) the City of New York had a formal policy that caused plaintiff's alleged injuries; (2) that New York City officials responsible for establishing final policy with respect to the subject matter of this case took action or made a specific decision which caused the alleged violation of plaintiff's constitutional rights; or (3) that there is an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage." Plaintiff's complaint does not allege any facts suggesting a custom or policy by defendant City of New York nor does plaintiff allege that a custom or policy of the City of New York caused the alleged constitutional violations to plaintiff in the instant case.

Accordingly, to the extent plaintiff brings federal claims against defendant City of New York, those claims must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Bahir Mustafa, Thomas Hourican, Robert Yaeger, Tracyann Kupinski, Thomas Driscoll, and Ruel Stephenson respectfully request that the Court (1) enforce the settlement agreement entered into by plaintiff Vesterhalt and defendants; or (2) in the alternative, dismiss the complaint as against defendants in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:    New York, New York
          June 24, 2009

                              Michael A. Cardozo
                              Corporation Counsel of the
                              City of New York
                              Attorney for Defendants City of New York, Bahir
                              Mustafa, Thomas Hourican, Robert Yaeger,
                              Tracyann Kupinski, Thomas Driscoll, and Ruel
                              Stephenson
                              100 Church Street, Room 3-183
                              New York, New York 10007
                              (212) 788-0893

                        By:   _____
                              Philip S. Frank (PF-3319)
                              Assistant Corporation Counsel
                              Special Federal Litigation Division

TO:   Anthony Ofodile, Esq. (Via Hand Delivery)
      Attorney for Plaintiff
      498 Atlantic Avenue
      Brooklyn, New York 11217

CC:   Honorable Miriam Goldman Cedarbaum (Via Hand Delivery)
      United States District Judge, SDNY
      Daniel Patrick Moynihan United States Courthouse
      500 Pearl Street
      New York, New York 10007