Docket No. 07 Civ. 02142 (MGC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAXINE VESTERHALT,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER BAHIR MUSTAFA, Shield No. 8703, DETECTIVE THOMAS HOURICAN, Shield #7555, DETECTIVE ROBERT YAEGER, Shield #5676, DETECTIVE TRACY KUPINSKI, Shield #6863, DETECTIVE THOMAS DRISCOLL Shield #7187, and LIEUTENANT RUEL STEPHENSON, 28th Precinct,

Defendants.

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
  *Attorney for Defendants City of New York,*
  *Bahir Mustafa, Thomas Hourican, Robert*
  *Yaeger, Tracyann Kupinski, Thomas Driscoll,*
  *and Ruel Stephenson*
  *100 Church Street*
  *New York, N.Y. 10007*

Of Counsel: Philip S. Frank
Tel: (212) 788-0893

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MAXINE VESTERHALT,

                                                Plaintiff,

                                                                  07 Civ. 02142 (MGC)

        -against-

THE CITY OF NEW YORK, POLICE OFFICER BAHIR
MUSTAFA, Shield No. 8703, DETECTIVE THOMAS
HOURICAN, Shield #7555, DETECTIVE ROBERT
YAEGER, Shield #5676, DETECTIVE TRACY
KUPINSKI, Shield #6863, DETECTIVE THOMAS
DRISCOLL Shield #7187, and LIEUTENANT RUEL
STEPHENSON, 28th Precinct,

                                              Defendants.
------------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

On June 24, 2009, defendants City of New York, Bahir Mustafa, Thomas Hourican, Robert Yaeger, Tracyann Kupinski, Thomas Driscoll and Ruel Stephenson ("City defendants") served plaintiff Maxine Vesterhalt with a motion to enforce the settlement agreement entered into between plaintiff Vesterhalt and City defendants on November 12, 2008 and subsequently signed by plaintiff. In the alternative, on June 24, 2009, should the Court choose not to enforce the settlement agreement, City defendants also served plaintiff Vesterhalt with a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) plaintiff cannot maintain any claim of excessive force, (2) defendants Mustafa, Hourican, Yaeger, Kupinski, Driscoll and Stephenson's entry was justified by the emergency circumstances exception to the warrant requirement, (3) plaintiff's false arrest claim should be

1

dismissed because defendants' confinement was privileged, (4) plaintiff Maxine Vesterhalt's claims under New York state law should be dismissed for failure to comply with conditions precedent to suit, and (5) plaintiff fails to state a claim under 42 U.S.C. § 1983 against defendant City of New York.

In opposition, plaintiff fails to make any arguments supported by law to defeat City defendants' motions. Moreover, plaintiff failed to submit any response to City Defendants' Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1, dated June 24, 2009. Accordingly, the Court should grant City defendants' motion to enforce the settlement agreement entered into by plaintiff Vesterhalt and City defendants or in the alternative, dismiss the action as against City defendants in its entirety with prejudice.

## STATEMENT OF FACTS

For a complete statement of facts, the City defendants respectfully refer the Court to the City Defendants' Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1, dated June 24, 2009. As plaintiff has not submitted any response to the City defendants' Local Rule 56.1 Statement, plaintiff has accordingly failed to controvert any statement in the City Defendants' Local Civil Rule 56.1 Statement; accordingly, all such statements should be deemed admitted for the purposes of the City defendants' summary judgment motion. See Local Civil Rule 56.1(c)("Each numbered paragraph in the statement of material facts required to be served by the moving party will be deemed to be admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); Stroud v. New York City, 374 F. Supp. 2d 341, 349 (S.D.N.Y. 2005); Berdugo v. City of New York, 03 Civ. 7319 (HB), 2004 U.S. Dist. LEXIS 16870, at *2, n.1 (S.D.N.Y. August 23, 2004) (defendants' statement of undisputed facts made

2

pursuant to Local Civil Rule 56.1 deemed admitted by plaintiff's failure to follow the requirements of Local Civil Rule 56.1(c)).

## ARGUMENT

### POINT I

### THE COURT SHOULD GRANT CITY DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

Plaintiff Vesterhalt argues that even though she signed the settlement agreement, the Court should conclude that the settlement agreement was not valid because plaintiff felt "so bad that she could not sleep" upon executing the agreement. As an initial matter, plaintiff's argument is without merit because plaintiff cites to her "Affidavit in Opposition" for the proposition that she felt pressured to sign the settlement agreement and after signing it could not sleep. However, plaintiff failed to file any "Affidavit in Opposition." Accordingly, plaintiff has failed to establish that her signing the settlement agreement caused her any physical or emotional trauma, nor can she establish that she was in any way pressured to sign the agreement. Moreover, even if plaintiff were to establish that her signing the settlement agreement caused her emotional or physical trauma, the executed settlement agreement is still enforceable. "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." Hallock v. State, 64 N.Y.2d 224, 230 (N.Y. 1984); see Willgetodt v. Hohri, 953 F.Supp. 557, 560 (S.D.N.Y. 1997)(absent a clear showing of fraud, collusion, mistake, or accident, a settlement agreement should be deemed presumptively valid and upheld by the Court). Here, plaintiff does not make any showing of, nor even alleges that there was fraud, collusion, mistake, or accident. The fact that plaintiff claims she felt bad after signing the settlement agreement is not sufficient to invalidate the settlement agreement. As Your Honor has previously noted, "[s]ettlement

agreements are strongly favored in New York, and may not be lightly cast aside...[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." Willgetodt, 953 F.Supp. at 560. Accordingly, the settlement agreement that plaintiff concedes she signed should be enforced.

Furthermore, plaintiff incorrectly argues that the settlement agreement is not valid despite her executing it because the settlement agreement was not submitted to defendants or the court. However, NY CLS CPLR R 2104 which governs stipulations provides that:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

The statute does not require that the subscribed writing be forwarded to the opposing party or to the court. Accordingly, plaintiff's execution of the settlement agreement bound her to the agreement.

Moreover, in addition to plaintiff signing the settlement agreement, her attorney forwarded a letter to the Court dated February 3, 2009 stating that plaintiff Vesterhalt agreed to the settlement of this case. See Exhibit "A." Both the Second and Fourth Appellate Divisions have held that letters by a party's attorney confirming the settlement agreement satisfies the subscribed writing requirement of CPLR 2104. See Davidson v. Metropolitan Tr. Auth., 2007 NY Slip Op 7814, 2 (N.Y. App. Div. 2d Dep't 2007)(holding that letter written by the plaintiff's attorney on behalf of the party to be bound confirming the essential terms of the oral settlement agreement reached was a subscribed writing sufficient to satisfy the requirements of CPLR 2104); Gaglia v. Nash, 8 A.D.3d 992, 993 (N.Y. App. Div. 4th Dep't 2004)(holding that although defendant's attorney did not countersign the letter in which plaintiff's attorney set forth

4

the terms of the settlement agreement, the subsequent letters acknowledging the settlement and signed by the defendant's attorney satisfy the requirement of a subscribed writing pursuant to CPLR 2104); Morrison v. Bethlehem Steel Corp., 75 A.D.2d 1001 (N.Y. App. Div. 4th Dep't 1980)("letters acknowledging the settlement and signed by the plaintiff's attorney satisfy the requirement of a subscribed writing."). Accordingly, because plaintiff's attorney confirmed and acknowledged that plaintiff agreed to settle the matter in his letter to the Court dated February 3, 2009, the requirement of a subscribed writing pursuant to CPLR 2104 has been met and the Court should enforce the settlement agreement.

Even if the Court finds that the technical requirements of CPLR 2104 were not met in the instant case, "substantial compliance" with the requirements of CPLR 2104 is deemed sufficient to give effect to a settlement stipulation. See Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 (2d Cir. 1996); Popovic v. New York City Health & Hospitals Corp., 180 A.D.2d 493, 579 N.Y.S.2d 399, 400 (N.Y. App. Div. 1st Dept. 1992); Golden Arrow Films, Inc. v. Standard Club of California, Inc., 38 A.D.2d 813 (N.Y. App. Div. 1st Dep't 1972). It is noteworthy that in plaintiff Vesterhalt's opposition papers, she does not dispute the terms of the settlement agreement, that she agreed to settle the matter or that she signed the settlement paperwork. The First Appellate Division held in Golden Arrow Films that where the parties do not dispute that a settlement agreement had been reached and do not dispute the terms thereof, the settlement agreement should be enforced. 38 A.D.2d 813 ("Here, however, there is no dispute that full agreement had been reached, nor is there any dispute as to the terms thereof. A record was made in written notes by the Justice in his chambers. Under the unique facts and circumstances of this case, we hold that there was substantial compliance with CPLR 2104."); see also A. J. Tenwood Associates, Inc. v. United States Fire Ins. Co., 104 Misc. 2d 467, 470 (N.Y. Sup. Ct. 1980).

Accordingly, the settlement agreement should be enforced because there was substantial compliance with the requirements of CPLR 2104 since the parties do not dispute the terms of the settlement agreement, that a settlement agreement was reached or that plaintiff, in fact, signed the settlement agreement.

Plaintiff incorrectly argues that even though defendants had to forego the opportunity to go to trial as a result of the settlement agreement, defendants did not suffer "prejudice" as a result of the settlement agreement. A party is estopped from invoking CPLR 2104 to avoid an oral out-of-court stipulation if it appears that the stipulation was in fact made and relied upon by the adverse party. See Monaghan, 73 F.3d at 1283; Smith v. Lefrak Organization, Inc., 142 A.D.2d 725 (N.Y. App. Div. 2d Dept. 1988)(defendants estopped from challenging oral stipulation of settlement that did not comply with CPLR 2104 where plaintiff relied to his detriment upon settlement); Hansen v. Prudential Lines, Inc., 118 Misc. 2d 568, 575, 461 N.Y.S.2d 670, 675 (Kings County Sup. Ct. 1983) (party opposing settlement may be estopped from relying upon technical noncompliance with CPLR 2104); A. J. Tenwood Associates, Inc. v. United States Fire Ins. Co., 104 Misc. 2d 467, 470 (N.Y. Sup. Ct. 1980). In A. J. Tenwood Associates, the court held that a party's "reliance on the oral settlement by fully executing and delivering the settlement documents, and not proceeding to an immediately available trial" was sufficient to enforce the settlement by preventing the party challenging the settlement agreement to invoke the technical requirements of CPLR 2104. Here, it is undisputed that an oral settlement agreement was reached by the parties. Plaintiff's counsel in his letter to the Court dated February 3, 2009 concedes plaintiff Vesterhalt "agreed to the settlement of this case after protracted negotiations" and went so far as to sign the settlement papers. Accordingly, City defendants relied on the settlement agreement with plaintiff to their detriment by delivering the

settlement papers to plaintiff and by not proceeding to trial. Therefore, defendants should be estopped from invoking the technical requirements of CPLR 2104, and the Court should enforce the settlement agreement.

Finally, all three of the cases that plaintiff relies on in her opposition to Defendants' Motion to Enforce Settlement are inapplicable to the case at bar because all three cases involve fraud, overreaching or collusion. See In re Estate of Frutiger, 29 N.Y.2d 143, 150 (N.Y. 1971); Melstein v. Schmid Laboratories, Inc., 116 A.D.2d 632 (N.Y. App. Div. 2d Dep't 1986); 546 W 46 LLC v. Bujas, 2004 NY Slip Op 50070U, 3-4 (N.Y. Civ. Ct. 2004). In all three cases cited by plaintiff, an attorney entered into a stipulation on behalf of a party without actual or apparent authority to do so. For instance, in Melstein, an attorney brought an action on behalf of plaintiff against a manufacturer without plaintiff's knowledge and entered into a stipulation of settlement and discontinuance with the manufacturer without the plaintiff's knowledge or consent. 116 A.D.2d 632. Accordingly, the court held that plaintiff should not be bound by the settlement agreement because the attorney had no authority or even apparent authority to enter into the agreement on behalf of plaintiff. Id. In the case at bar, however, plaintiff does not argue or even allege any fraud, collusion, mistake or accident when she agreed to and signed the settlement agreement. In fact, it is undisputed that plaintiff granted her attorney the authority to enter into the settlement agreement with defendants. Accordingly, the Court should disregard the irrelevant authority cited to by plaintiff in her opposition papers and enforce the settlement agreement because plaintiff granted her attorney authority to enter into the settlement agreement as evidenced by her signing the settlement paperwork.

## POINT II

## PLAINTIFF CANNOT MAINTAIN A CLAIM OF EXCESSIVE FORCE AGAINST ANY INDIVIDUAL DEFENDANT

Should the court decide not to grant defendants' motion to enforce the settlement agreement, plaintiff Maxine Vesterhalt's claim of excessive force must be dismissed as a matter of law. Plaintiff Vesterhalt incorrectly argues that the individual defendant officers either used excessive force against plaintiff or had a realistic opportunity to intervene on behalf of plaintiff but failed to do so. A "police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." Younger v. City of New York, 480 F. Supp. 2d 723, 732 (S.D.N.Y. 2007)(internal quotation marks and citations omitted). However, as a matter of law, plaintiff cannot establish that any of the individual defendant police officers either used excessive force against plaintiff or had a realistic opportunity to intervene on her behalf.

As an initial matter, it is undisputed that neither defendant Lieutenant Ruel Stephenson or Officer Bahir Mustafa were even in the apartment during the time that ESU officers were in the apartment, which is when the alleged excessive force took place. See Defendants' 56.1 Statement at ¶ 23. Accordingly, as a matter of law, defendants Stephenson and Mustafa cannot be held liable for plaintiff's claim of excessive force because according to the undisputed facts a reasonable juror could not find that either defendant was even inside the apartment when the force took place and therefore neither could have assaulted plaintiff or intervened on her behalf.

Moreover, plaintiff Vesterhalt herself testified that only a single officer used excessive force against her by throwing her to the floor and putting his boot on her neck, but the officer let plaintiff up "[w]hen another officer came from up front and said 'let her up.'" Id. at ¶ 15; Dep.

8

of Maxine Vesterhalt, dated May 30, 2008, at 136:13 – 136:18, annexed to Frank's Decl. as Exhibit "L." Therefore, according to plaintiff's own testimony an officer did in fact intervene on her behalf during the incident. Furthermore, plaintiff Vesterhalt cannot identify the officer who allegedly used force against her nor does she know what he even looks like. See Defendants' 56.1 Statement at ¶ 16. Finally, it is undisputed that defendants Hourican, Kupinski, Yaeger ran by plaintiff, who was at the entrance to the apartment, and proceeded into the apartment to deal with other occupants of the apartment. Accordingly, as a matter of law, none of the individual defendants could have either used any force against plaintiff or intervened while they searched the rest of the apartment.

Plaintiff also argues that plaintiff's failure to seek medical treatment is not fatal to her excessive force claim. However, to sustain a claim for excessive force, plaintiff must establish through evidence, that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003)(quoting Walsh, 194 F.3d at 50). "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a [person's] constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). A plaintiff may establish excessive force if she can demonstrate that the amount of force used was more than *de minimis*. Perkins, 285 F. Supp. 2d at 283 (court dismissing excessive force claim where plaintiff submitted no evidence of injuries and medical records established that any force used was *de minimis*); Cunningham v. Rodriguez, 01 Civ. 1123 (DC), 2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002) (court finding blows to back and face were *de minimis*); Bove v. City of New York, 98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999) (court granting summary judgment for defendants on excessive force claim where objective evidence of hospital records did not support plaintiff's

claims but showed force used was *de minimis*). Here the Court should dismiss plaintiff's excessive force claim as a matter of law because she failed to demonstrate any objective evidence of medical treatment demonstrating that her injuries are anything more than *de minimus*.

### POINT III

### DEFENDANTS ENTRY INTO THE APARTMENT WAS JUSTIFIED BY THE EMERGENCY CIRCUMSTANCES EXCEPTION TO THE WARRANT REQUIREMENT

Plaintiff argues that the exigent circumstances exception to the warrant requirement does not apply to the case at bar because the officers verbally threatened to harm plaintiff and thus were not motivated by exigent circumstances. As an initial matter, plaintiff has no basis for alleging that officers made verbal threats to harm plaintiff and were not motivated by exigent circumstances. As plaintiff has not submitted any response to the City defendants' Local Rule 56.1 Statement, plaintiff has accordingly failed to controvert any statement in the City Defendants' Local Civil Rule 56.1 Statement. See Local Civil Rule 56.1(c). Nowhere in the City Defendants' Local Civil Rule 56.1 Statement do City Defendants concede that officers made any verbal threats to plaintiff or were not motivated by exigent circumstances. Moreover, challenges to the Fourth Amendment cannot be based on the subjective motivations of individual officers. See Whren v. United States, 517 U.S. 806, 814 (U.S. 1996). Moreover, plaintiff argues that because she told officers at the door to the apartment that "now everything was O.K." there were no longer exigent circumstances to enter the apartment. However, "exigent circumstances do not end merely because the victim indicates that she is no longer in danger. That is a determination for the officer to make independently in light of the totality of the circumstances." Tierney v. Davidson, 133 F.3d 189, 198 (2d Cir. 1998).

It is well established that because the ultimate touchstone of the Fourth Amendment is objective "reasonableness," the warrant requirement for searches and seizures inside a home is subject to certain exceptions, including entry onto private property under exigent circumstances. Flippo v. West Virginia, 528 U.S. 11, 13, 120 S. Ct. 7, 145 L. Ed. 2d 16 (1999) (per curiam); Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). One such exigency which may justify a warrantless entry is the need to "render emergency aid and assistance to a person whom [officers] reasonably believe to be in distress and in need of that assistance." Tierney, 133 F.3d at 196. Accordingly, plaintiff's claims relating to the warrantless entry to the apartment cannot survive a motion for summary judgment because the entry and subsequent search were justified by exigent circumstances, namely a well-founded concern in avoiding the serious injury of an occupant of the apartment.

In the case at bar, the undisputed facts gave the NYPD officers a reasonable basis to believe that there was an emotionally disturbed person in the apartment who posed an imminent threat to the safety of himself and others. See Point III of Defendants' Memorandum of Law in Support of their Motion for Summary Judgment dated June 24, 2009; Defendants' 56.1 Statement at ¶¶ 6-10 and 24. On March 12, 2006, a 911 call was made by a male caller who stated that there was a male in the lobby of 207 West 110th Street going crazy and breaking items with a bat. See Defendants' 56.1 at ¶ 6. Responding officers saw broken glass in the lobby of the building and heard very loud screaming coming from plaintiff's apartment, confirming the report made in the 911 call. See Defendants' 56.1 at ¶ 10. According to his own admission, when Tyree Davis arrived to his building after a party, he had an anxiety attack because he believed that the building was trying to kill him, he broke two light bulbs attached to the front of the building and yelled at the top of his lungs both outside the building and inside his apartment.

11

Id. at ¶¶ 8-9. Under these circumstances, it was not objectively unreasonable for the individual officers to believe that the occupants of the apartment might have been injured or threatened with injury or might otherwise need emergency assistance or protection. Accordingly, plaintiff's claim that officers warrantless entry was unconstitutional fails as a matter of law.

## POINT IV

### PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE DEFENDANTS' CONFINEMENT WAS PRIVILEGED.

Plaintiff argues that City defendants' brief and temporary detention of plaintiff Vesterhalt in the apartment, while officers detained the emotionally disturbed Tyree Davis, was not privileged pursuant to Mental Hygiene Law § 9.41 or by probable cause. The crux of plaintiff's argument is that although the arrest of Tyree Davis was privileged pursuant to Mental Hygiene Law § 9.41 or because it was based upon probable cause, this did not give the defendant officers justification to briefly detain plaintiff while they detained Tyree Davis. However, this argument defies common sense. Due to the undisputed facts set forth in Point III, *supra*, the defendant officers were privileged in their detention of Tyree Davis pursuant to Mental Hygiene Law § 9.41 and because they had probable cause to believe that Tyree Davis posed an imminent threat of harm to himself or to others. New York State Mental Hygiene Law § 9.41 provides in pertinent part that "[a]ny ... police officer ... may take into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others." As the officers entered the apartment in an attempt to prevent any bodily harm or loss of life to the occupants of the apartment, they clearly had probable cause and justification pursuant to Mental Hygiene Law § 9.41 to briefly detain all the occupants of the

apartment while they sorted out and prevented the emergency circumstances of the situation and determined who the emotionally disturbed individual was.

In an analogous situation, it is clearly established that a valid search warrant for contraband implicitly carries with it the authority to detain all occupants of the premises while the search warrant is conducted. See Mich v. Summers, 452 U.S. 692 (1981). Similarly, in the instant matter, it was objectively reasonable under the Fourth Amendment for the officer defendants to detain all the occupants of the apartment while the officers investigated the circumstances of the emergency situation. Accordingly, as a matter of law, plaintiff's claim for false arrest must be dismissed. In the alternative, since it was objectively reasonable for the officers to believe that they could have briefly detained Ms. Vesterhalt, they should be entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194 (2001).

## POINT V

### PLAINTIFF MAXINE VESTERHALT'S CLAIMS UNDER NEW YORK STATE LAW SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO SUIT

Plaintiff's argument that her failure to file a Notice of Claim pursuant to Gen. Mun. Law §§ 50-e and 50-i does not preclude her from bringing state law claims against the individual defendants because intentional torts of individual defendants are not covered by the statute is flawed.[1] Plaintiff argues that Gen. Mun. Law §§ 50-e and 50-i do not require service of a notice of claim upon a municipal corporation when an individual employee is sued unless the individual was acting within the scope of employment and the City is required to indemnify the individual

---

[1] Because plaintiff concedes that she failed to file a Notice of Claim for her suit against the City of New York, all of plaintiff's state law claims against defendant City of New York must be dismissed as a matter of law for failure to comply with Gen. Mun. Law §§ 50-e and 50-i.

13

officer. As an initial matter, plaintiff misinterprets the plain language of Gen. Mun. Law § 50-e, which provides that:

> Service of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a condition precedent to the commencement of an action or special proceeding against such person. If an action or special proceeding is commenced against such person, <u>but not against the public corporation</u>, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law.

(emphasis added); see also Alifieris v. American Airlines, Inc., 63 N.Y.2d 370, 377 (N.Y. 1984). The statute clearly provides that if an action against an employee of a public corporation is also commenced against the public corporation itself, then a Notice of Claim is required. Id. Here, plaintiff commenced her action against the City of New York and individual employees of the City of New York. Accordingly, pursuant to Gen. Mun. Law § 50-e, a Notice of Claim was a condition precedent to suit against the City and the individual defendants.

Furthermore, plaintiff's argument is flawed because it concedes that if the individual defendant officers were acting within the scope of their employment, then plaintiff must file a Notice of Claim pursuant to Gen. Mun. Law §§ 50-e and 50-i as a condition precedent to sue the individual employees of the City. In a case where "plaintiff offered no evidence that the respondents were acting outside the scope of their employment....her claims against them based on the July 22, 1993, arrest are precluded, and so much of the complaint as was based upon that arrest was properly dismissed insofar as asserted against the respondents." Zwecker v. Clinch, 279 A.D.2d 572, 574 (N.Y. App. Div. 2d Dep't 2001). As an initial matter, plaintiff herself concedes in the Amended Complaint that the defendant officers were acting within the scope of their employment. See Amended Complaint dated November 6, 2007 at ¶ 57. Plaintiff, in her

14

Amended Complaint, alleges that defendants' actions "were done in the course of their employment." Id; see also Kramer v. New York, 157 A.D.2d 404, 408 (N.Y. App. Div. 1st Dep't 1990)("Currently, under state and city law, New York City policemen, firemen, and teachers are indemnified against civil suits arising out of the course of their employment.")(emphasis provided and internal quotation marks omitted). Moreover, plaintiff effectively concedes that the defendant officers were acting within the scope of employment when she alleges in the Amended Complaint that defendant City of New York is liable under a common law theory of respondeat superior for the acts of its officers. See Amended Complaint dated November 6, 2007 at ¶ 57. "An employer may be held vicariously liable under the doctrine of respondeat superior provided the employee was acting within the scope of his employment." Galvani v. Nassau County Police Indemnification Review Bd., 242 A.D.2d 64, 68 (N.Y. App. Div. 2d Dep't 1998). Accordingly, plaintiff concedes that defendant officers were acting within the scope of their employment and therefore her state law claims should be dismissed for failure to file a Notice of Claim.

Moreover, in the instant case, according to the undisputed facts, it is clear that all the individual defendants were acting within the scope of their employment. The defendant officers responded to a 911 call of a man acting emotionally disturbed, yelling and breaking items with a baseball bat, heard yelling coming from plaintiff's apartment, the ESU officers entered the apartment in order prevent the emotionally disturbed individual officers from injuring himself or others and temporarily detained plaintiff as they did so. See Defendants' 56.1 Statement at ¶¶ 6-24. Plaintiff offers no evidence to establish that the officers were acting outside the scope of their employment. It is clear that the officers were acting within the scope of their employment by responding to the 911 call, and therefore, plaintiff's state law claims against the individual defendants must be dismissed as a matter of law.

# POINT VI

## PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF NEW YORK

Plaintiff's opposition papers fail to address City defendants' point that plaintiff failed to state a claim under 42 U.S.C. § 1983 against defendant City of New York. Accordingly, plaintiff concedes that her claim against defendant City pursuant to § 1983 fails as a matter of law. Local Civil Rule 7.1(a) of the Southern and Eastern Districts of New York states:

> Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under separate headings, *into as many parts as there are points to be determined*. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.

Local Civil Rule 7.1(a) (emphasis added). Accordingly, as plaintiff's opposition is entirely devoid of any arguments with respect to these claims (See Plaintiff's Opposition), defendants submit that plaintiff has waived these claims and that defendants are entitled to summary judgment. See Local Civil Rule 7.1(a). See also ENH, Inc. v. International Diffusion SRL, 97 Civ. 3202 (LAP), 1997 U.S. Dist. LEXIS 7665, at *2-*3 (S.D.N.Y. June 2, 1997)(noting that plaintiff's failure to file a memorandum of law, standing alone, offers court sufficient basis to grant defendant's motion); Scott v. Keane, 94 Civ. 8745 (JFK), 1995 U.S. Dist. LEXIS 15785, at *2-*3 (S.D.N.Y. October 25, 1995)(granting defendants' motion to dismiss by default due to plaintiff's failure to submit opposition papers in accordance with the Local Civil Rules).

# CONCLUSION

For the reasons set forth in their Motion to Enforce Settlement or in the Alternative for Summary Judgment, dated June 24, 2009, and the reasons set forth herein, City defendants respectfully request that the Court (1) enforce the settlement agreement entered into by plaintiff Vesterhalt and City defendants; or (2) in the alternative, dismiss the complaint as against City defendants in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:       New York, New York
               September 8, 2009

                                      MICHAEL A. CARDOZO
                                      Corporation Counsel of the City of New York
                                      Attorney for Defendants City of New York, Bahir Mustafa, Thomas Hourican, Robert Yaeger, Tracyann Kupinski, Thomas Driscoll, and Ruel Stephenson
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 788-0893

By:       */s/ Philip S. Frank*
            Philip S. Frank (PF 3319)
            Assistant Corporation Counsel