UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
MAXINE VESTERHALT,

                Plaintiff,          <u>OPINION</u>

      -against-               07 Civ. 2142 (MGC)


THE CITY OF NEW YORK, POLICE OFFICER
BAHIR MUSTAFA, DETECTIVE THOMAS
HOURICAN, DETECTIVE ROBERT YAEGER,
DETECTIVE TRACY KUPINSKI, DETECTIVE
THOMAS DRISCOLL and LIEUTENANT RUEL
STEPHENSON,

                Defendants.

--------------------------------X

APPEARANCES:

        LAW OFFICES OF ANTHONY OFODILE
        Attorneys for Plaintiff
        498 Atlantic Avenue
        Brooklyn, NY 11217

        By:  Anthony Chukwuka Ofodile, Esq.


        MICHAEL A. CARDOZO
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        Attorney for Defendants
        100 Church Street
        New York, NY 10007

        By:  Craig Andrew Hanlon, Esq.
             David M. Hazan, Esq.
             Philip Sebastian Frank, Esq.


**Cedarbaum, J.**

     Plaintiff Maxine Vesterhalt sues defendants for false

arrest, use of excessive force, and unreasonable search of her

residence under 42 U.S.C. § 1983.  She also sues the individual defendants for trespass and assault and battery under New York state law.  Defendants move to enforce settlement with Vesterhalt or, in the alternative, for summary judgment on her claims.  For the reasons that follow, defendants' motion to enforce settlement is denied.  Defendants' motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

## I. Undisputed Facts

Plaintiffs Maxine Vesterhalt, Elizabeth Elohim, and Tyree Davis commenced this action on March 13, 2007 against the City of New York and Police Officer Bahir Mustafa.  On December 7, 2007, plaintiffs filed an amended complaint adding the additional individual defendants, Detectives Thomas Hourican, Robert Yaeger, Tracyann Kupinski, and Thomas Driscoll and Lieutenant Ruel Stephenson.  Plaintiffs Tyree Davis and Elizabeth Elohim entered into settlement agreements with the defendants on December 3, 2008 and their claims were dismissed with prejudice on December 8, 2008.  Therefore, Maxine Vesterhalt is the sole remaining plaintiff in this case.

Vesterhalt's claims arise out of an incident which occurred early in the morning of March 12, 2006, when defendants responded to a 911 call.  The caller stated that there was a male in the lobby of 207 West 110th Street screaming and breaking items with

a bat.  The male in the lobby was Tyree Davis, who came home early in the morning from a party which began the previous evening.  Davis had an anxiety attack when he arrived home, which caused him to scream loudly and to break two light bulbs in front of the building.  Davis thought the building was trying to kill him and he therefore prayed and yelled at the building for approximately ten to fifteen minutes.

By the time the police officers responding to the call arrived at the scene, Davis was inside his apartment.  Davis lives with plaintiffs Vesterhalt and Elohim.  After going inside his apartment, Davis continued to scream loudly for an additional fifteen minutes.

Defendant Mustafa and his partner were the first ones to respond to the call.  When they arrived at the scene, they found broken glass in the lobby of the building and heard loud screaming coming from Davis' apartment. Mustafa and his partner knocked on the door and identified themselves as police officers. Davis answered orally from inside and refused to open the door unless they had a warrant.

Lieutenant Stephenson also responded to the incident when he heard about it over the police radio.  He joined Mustafa and his partner outside the door to the apartment.  Next to arrive at the scene was an Emergency Services Unit ("ESU"), which included Detectives Hourican, Kupinski, Yaeger and Driscoll.

The events which occurred after the ESU arrived are
disputed.  In their Rule 56.1 statement, defendants do not take a
clear position on what happened, but rather state that
"[a]ccording to Vesterhalt's deposition testimony," certain
events occurred.  Thus defendants only admit that Vesterhalt
testified to certain events, but do not take a position on what
actually happened

Vesterhalt testified that while defendants were outside of
the apartment, some of them made verbal threats to her and her
daughter that the officers were going to enter the apartment and
harm them.  However, Vesterhalt eventually agreed to open the
door.  Vesterhalt testified that she agreed to open the door only
because she heard defendants attempting to break it down.

According to her testimony, as soon as she began to open the
door, the police burst in, slamming the door into her.  The
police officers then grabbed her and threw her on the floor and
one of them stepped on her neck with his boot to hold her down.
She could not see who threw her down or who held her on the floor
with his boot.  While she was being held down, several officers
physically assaulted the remaining occupants of the apartment.
Eventually, the officers allowed her to sit up so that they could
handcuff her. She remained handcuffed while the other occupants
were being transported out of the apartment to the hospital.
Vesterhalt did not seek any medical attention for her injuries.

## II. Settlement Negotiations

On September 23, 2008, plaintiffs Vesterhalt, Elohim and Davis, accompanied by their attorney, attended a settlement conference before Magistrate Judge Freeman.  On October 3, 2008, defendants' attorney made an offer of judgment of $50,001 to plaintiff Elohim pursuant to Fed. R. Civ. P. 68.  By email dated October 8, 2008, counsel for Elohim accepted.

On November 12, 2008, counsel for defendants and counsel for plaintiffs entered into an oral agreement to settle the matter in the amount of $27,500 for Vesterhalt, $40,000 for Davis and $40,00 in attorneys fees related to plaintiff Elohim's acceptance of the Rule 68 offer of judgment of $50,001.  Counsel for defendants memorialized the settlement agreement in writing and sent a stipulation and general release to counsel for plaintiff on November 14, 2008. The stipulation stated that "Vesterhalt shall execute and deliver to defendants' attorney all documents necessary to effect this settlement, including, without limitation, a release."  The stipulation and general release were accompanied by a cover letter signed by defendants' counsel which stated "[k]indly execute these documents and return them to me so that we can begin processing the settlement."

In addition, by a second letter dated November 14, 2008, counsel for defendants informed the Court that the case had been settled on November 12, 2008, and that the stipulation would be

submitted upon execution by the plaintiffs.  The letter further stated that the parties requested that the trial date be cancelled.

However, almost two months later, plaintiffs' counsel sent a letter dated February 3, 2008, which stated that although all three plaintiffs had signed the settlement papers, the day after signing, plaintiff Vesterhalt had asked him not to transmit her papers to defendants because she had decided not to settle.

**DISCUSSION**

**I.   Summary Judgment Standard**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of fact exists, the court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)(citing Anderson, 477 U.S. at 255).  It is axiomatic that courts should not assess credibility on summary judgment. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (citing United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994)).

Summary judgment is appropriate when "the nonmoving party fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "[A] plaintiff must provide more than

7

conclusory allegations to resist a motion for summary judgment."
Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008)(citing
Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

## II. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Excessive Force Claim

Defendants contend that summary judgment should be granted
to them dismissing plaintiff's excessive force claim.  Defendants
argue that plaintiff cannot establish that any of the individual
defendants were personally involved in the alleged use of
excessive force against her because she could not see who pushed
her down.  They also argue that plaintiff cannot prove that the
force used against her was excessive because she did not seek any
medical attention for her injuries.

### A. Personal Involvement of Defendants

It is well-settled that "personal involvement of defendants
in alleged constitutional deprivations is a prerequisite to an
award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501
(2d Cir. 1994). A police officer is personally involved in the
use of excessive force if the officer either: (1) directly
participates in an assault; or (2) is present during the assault,
and fails to intercede on behalf of the victim even though he had
a reasonable opportunity to do so. Ricciuti v. New York City
Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997).  A plaintiff
need not establish which officer, among a group of officers,

directly participated in the attack and which officer failed to intervene. Jeffreys v. Rossi, 275 F. Supp. 2d 463, 477 (S.D.N.Y. 2003)(citing Skorupski v. County of Suffolk, 652 F. Supp. 690, 694 (E.D.N.Y. 1987); Fischl v. Armitage, 128 F.3d 50, 57 (2d Cir. 1997)).

In this case, Vesterhalt testified that she could not identify who threw her to the floor and held her there with his boot. However, the testimony of the defendants shows that at the time Vesterhalt was allegedly thrown to the floor and held down, all of the individual defendants were present either inside the apartment or directly outside the door. Therefore, it is possible that all of the officers saw what happened to Vesterhalt when the door was thrown open and she was thrown to the ground, but failed to intervene on her behalf.

With all permissible inferences drawn in plaintiff's favor, and without assessing her credibility, the record suffices to present a genuine issue of material fact as to whether each of the individual officers was personally involved in using or permitting the use of the alleged excessive force.

**B. Failure to Seek Medical Care Does Not Foreclose A Claim for Excessive Force**

Defendants argue that plaintiff's failure to seek medical care for any injuries forecloses her claim for excessive force. However, the Second Circuit has previously rejected this

argument.  In <u>Robinson v. Via</u>, 821 F.2d 913 (2d Cir. 1987), the
Second Circuit sustained a claim of excessive force despite the
plaintiff's failure to seek medical care.  The court stated that,
"[w]hile Robison did not seek medical treatment for her injuries,
and this fact may ultimately weigh against her in the minds of
the jury in assessing whether the force used was excessive, this
failure is not fatal to her claim. If the force used was
unreasonable and excessive, the plaintiff may recover even if the
injuries inflicted were not permanent or severe." <u>Id</u>. at 924.
Thus, although plaintiff did not seek medical care for her
injuries, she may nevertheless prevail on her claim of excessive
force.

## II.  Plaintiff's Claim for Warrantless Entry In Violation of The Fourth Amendment

Defendants argue that summary judgment should be granted on
plaintiff's warrantless entry claim because the undisputed facts
show that the entry was justified by exigent circumstances.

## A. The Exigent Circumstances Exception to the Warrant Requirement

The warrant requirement of the Fourth Amendment guarantees
the fundamental right to be free from government intrusion into
the privacy of one's home. <u>United States v. MacDonald</u>, 916 F.2d
766, 769 (2d Cir. 1990)(citing <u>Payton v. New York</u>, 445 U.S. 573,
585-86, 589-90 (1980)).  It is well-settled, however, that the
warrant requirement must yield in those situations where exigent

circumstances demand that law enforcement agents act without delay. See Warden v. Hayden, 387 U.S. 294, 298-99 (1967); United States v. Crespo, 834 F.2d 267, 270-71 (2d Cir. 1987), cert. denied, 485 U.S. 1007 (1988). The test to determine whether exigent circumstances exist "is an objective one that turns on . . . the totality of the circumstances confronting law enforcement agents in the particular case." United States v. Klump, 536 F.3d 113, 117 (2d Cir. 2008)(citing United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)).  The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an "urgent need" to render aid or take action. United States v. Martinez-Gonzalez, 686 F.2d 93, 100 (2d Cir. 1982).  Summary judgment should be granted if no reasonable jury could conclude that the warrantless entry was not justified by the existence of exigent circumstances. Anthony v. City of New York, 339 F.3d 129, 136 (2d Cir. 2003).

In this case, the defendants were responding to a 911 call. The Second Circuit has made clear that "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009)(citations omitted). The higher degree of reliability is "rooted in the special

reliability inherent in reports of ongoing emergencies." Id.
(citing United States v. Hicks, 531 F.3d 555, 59 (7th Cir.
2008)).  Given the greater reliability of an emergency 911 call,
the requisite level of corroboration necessary to perform an
investigatory stop or justify a warrantless entry is lower. Id.

For example, in Anthony v. City of New York, the Second
Circuit reviewed a district court's grant of summary judgment on
a claim of unlawful warrantless entry into a home.  339 F.3d 129,
131 (2d Cir. 2003).  The police officers had entered the home
based on an anonymous 911 caller's allegation that she was being
attacked by a man with a knife and a gun.  Id.  The Second
Circuit affirmed summary judgment for police officers on the
ground that the warrantless entry into the home was justified by
exigent circumstances. Id. at 136.  Any concern about the
reliability of an uncorroborated, anonymous tip was "not
implicated . . . where the caller expressed an immediate risk of
harm to herself, and where the address from which the call was
placed was verified." Id.

**B. The Exigent Circumstances Confronting Defendants Were
Sufficient to Justify The Warrantless Entry**

When the defendants responded to the 911 call in this case,
they found broken glass outside Vesterhalt's apartment building
and heard screaming coming from inside her apartment.  Vesterhalt
herself testified that Davis continued to scream loudly once he
entered the apartment and that she saw broken glass on the ground
outside of the building when she left the next day. The broken
glass and screaming corroborated the 911 caller's statement that
a man had been screaming and breaking items with a bat.

Based on these circumstances, the defendants had reason to
believe that the man who was inside screaming was also wielding a
baseball bat which he had just been using to break lamps outside.
Therefore, no reasonable jury could find that exigent
circumstances did not exist to enter the apartment.

## II.  Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Claim for False Arrest

Defendants argue that summary judgment should be granted on plaintiff's false arrest claim because her confinement was privileged pursuant to Mental Hygiene Law § 9.41 and was based on probable cause.  In addition, defendants argue that they are entitled to qualified immunity because it was objectively reasonable for them to believe that they were not violating plaintiff's Fourth Amendment rights.  Finally, Defendants argue that it is clearly established that a valid search warrant for contraband implicitly carries with it the authority to detain the occupants of the premises, and that their detention of Vesterhalt was analogous to this type of privileged detention.

Defendants are correct that the existence of probable cause to arrest is a complete defense to an action for false arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  In addition, under New York State Mental Hygiene Law § 9.41, "any . . . police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in harm to himself or others."  Finally, under the doctrine of qualified immunity, defendants are protected from liability for civil damages if it was objectively reasonable for them to believe that their conduct did not violate plaintiff's rights. Anderson v. Creighton, 483 U.S. 635, 638 (1987).

14

It is also clearly established that a valid search warrant
for contraband implicitly carries with it the authority to detain
all occupants of the premises while the search is conducted. <u>See</u>
<u>Mich. v. Summers</u>, 452 U.S. 692 (1981).  The authority to detain
occupants of an apartment pursuant to a search warrant is meant
to protect the legitimate law enforcement interest in preventing
flight in the event that incriminating evidence is found, in
preventing destruction of evidence and in preventing the violence
which may arise from frantic efforts to destroy incriminating
evidence.  <u>Id</u>. at 703.  However, these same concerns do not exist
when the police enter a home in order to arrest someone who is
mentally ill.  Thus, when a warrantless entry into a home is
justified by exigent circumstances, "what may be done by the
police or other public authorities once they are inside the
premises . . . must be assessed upon a case-by-case basis, taking
into account the type of emergency which appeared to be present .
. ." <u>Tierney v. Davidson</u>, 133 F.3d 189, 198 (2d Cir.
1998)(citing 3 WAYNE LAFAVE, SEARCH AND SEIZURE § 6.6(a), at 400-01
(3d ed. 1996)).

In this case, it is not possible to judge whether the
circumstances confronting defendants justified Vesterhalt's
arrest because a genuine issue of fact exists as to what those
circumstances were.  Indeed, Defendants have not offered any
explanation as to why it was objectively reasonable to arrest

Vesterhalt, other than that they had probable cause to arrest Davis because they had reason to believe that he was dangerous and mentally ill.  Defendants have not explained why their investigation of Davis' behavior made it objectively reasonable to arrest Vesterhalt. Therefore, a genuine issue of material fact exists as to what circumstances confronted the defendants when they entered the apartment.

**III. Pendent Common Law Claims for Trespass And False Arrest Against Individual Officers**

Defendants argue that plaintiff's pendent state law claims, alleging trespass and common law false arrest, should be dismissed for failure to file a notice of claim.  Under New York law, a notice of claim is a mandatory condition precedent to the bringing of a tort claim against a public corporation and any of its officers, appointees, or employees. N.Y. Gen. Mun. Law § 50-e(1)(a) (McKinney 1986).  Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action. Wrenn v. New York City Health & Hosps., 104 F.R.D. 553, 557 (S.D.N.Y. 1985); Pretino v. Wolbern, 84 A.D.2d 830, 831 (N.Y. App. Div. 2d Dep't 1981).

However, in suits against municipal or county employees, as opposed to suits against municipalities or counties themselves, "service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to

indemnify such person under this chapter or any other provision of law."  N.Y. Gen. Mun. Law § 50-e(1)(b).  Although a municipality is required to "indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, . . .the duty to indemnify and save harmless . . .shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee."  N.Y. Gen. Mun. L. § 50-k(3).

Because trespass and false arrest are intentional torts under New York law, plaintiff's claims, by definition, constitute "intentional wrongdoing" that does not qualify for indemnification. See Augeri v. Roman Catholic Diocese of Brooklyn , 225 A.D.2d 1105, 1106 (N.Y. App. Div. 4th Dep't 1996)(stating that the elements of trespass are intentional entry by defendants onto plaintiffs' land and wrongful use without justification or consent); Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003)(stating that under New York law, the elements of a false arrest claim are (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged).  Therefore, plaintiff's trespass and false arrest claims are not procedurally barred by her failure to file a Notice of Claim.  See Kavazanjian v. Rice, 2008 U.S. Dist. LEXIS

17

103881, *20-21 (E.D.N.Y. Dec. 22, 2008)(declining to grant

summary judgment based on plaintiff's failure to file Notice of

Claim where plaintiff alleged intentional torts against municipal

employees); Brenner v. Heavener, 492 F. Supp. 2d 399, 404-05

(S.D.N.Y. 2007)(same).

## IV.  Plaintiff Fails to State a Monell Claim Against the City of New York Under § 1983

Defendants argue that plaintiff fails to state a claim
against the City of New York under § 1983 because she does not
allege that the municipality itself was at fault for the
officers' actions.

A plaintiff who seeks to hold a municipality liable in
damages under § 1983 must prove that the municipality was, in the
language of the statute, the "person who ... subject[ed], or
cause[d] [him] to be subjected," to the deprivation of his
constitutional rights. 42 U.S.C. § 1983. As explained by the
Supreme Court, this means that an official policy or custom must
be shown to be the cause of the deprivation of constitutional
rights.  Monell v. New York City Dept. of Soc. Servs., 436 U.S.
658, 694 (1978).

Because plaintiff fails to allege that any policy or custom
of the City of New York caused the alleged excessive force,
warrantless entry or false arrest by the defendants, she fails to
state a § 1983 claims against the City.

## V.  Plaintiff Is Not Bound By the Settlement Agreement

Defendants argue that plaintiff should be bound by the
settlement agreement which they orally reached with her attorney
and which they memorialized in writing and sent to her for her
signature.

## A. Choice of Law

The Second Circuit has never explicitly held whether state

law, as opposed to federal common law, applies to agreements

settling federal claims. See Ciaramella v. Reader's Digest Ass'n,

131 F.3d 320, 322 (2d Cir. 1997) (declining to decide between

federal and state law in part because there was "no material

difference" between the respective standards). Therefore, "[i]t is unclear whether the settlement of federal claims is governed by New York law or federal common law."   Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007).

In practice, the Second Circuit and its district courts have applied state law to settlements of federal claims when it appears that there is no material difference between the application of state and federal law. See, e.g., Torres v. Walker, 356 F.3d 238, 245-46 (2d Cir. 2004) (applying New York law to review § 1983 stipulation agreement); Hughes v. Lillian Goldman Family, LLC, 153 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2001) (applying New York law to review of Fair Housing Act release). However, some judges in the Southern District have held that federal common law applies to the settlement of federal claims. See Kilcullen v. Metro North Commuter R.R. Co., 1998 U.S. Dist. LEXIS 14765, at *13 (S.D.N.Y. Sept. 21, 1998) (holding that New York CPLR § 2104, which sets forth requirements for binding settlement agreements, did not apply to case arising solely under federal law).

I do not reach this issue because the purported settlement agreement is not binding under either New York or federal law.

**B. New York Law**

Under New York law, "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one

19

made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." N.Y. C.P.L.R. § 2104.

Therefore, under New York law, the oral agreement made between counsel on November 12, 2008, is not binding because it was not made in open court. In addition, defendants never received a signed, written agreement from plaintiff nor was such an agreement ever filed with the court. Finally, although defendants wrote to the court with news of the oral settlement, because this letter was not signed by plaintiff or her attorney, it is not an effective stipulation under CPLR § 2104. A "stipulation" of discontinuance is not effective as a stipulation if it is not signed by the parties or their attorneys. Tortorello v. Carlin, 162 A.D.2d 291, 292 (N.Y. App. Div. 1st Dep't 1990)(citing Klein v. Mt. Sinai Hosp., 61 N.Y.2d 865, 866 (N.Y. 1984); CPLR § 2104).

Accordingly, under New York law, the purported settlement is not binding.

**C. Federal Common Law on Enforcement of Settlement Agreements**

    **1.  Oral Settlement Agreements Are Enforceable**

As stated by the Second Circuit, "[u]nder common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80-83 (2d Cir. 1986).

## 2. Apparent Authority

"The decision to settle is the client's to make, not the attorney's." Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989)(citing United States v. Beebe, 180 U.S. 343, 352 (1901)). However, if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld. Fennell, 865 F.2d at 502 (citing Int'l Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 55 (2d Cir. 1979)). In order to create apparent authority, the principal must manifest to the third party that he "consents to have the act done on his behalf by the person purporting to act for him." Fennell, 865 F.2d at 502 (citing Restatement (Second) of Agency § 27 (1958)).

A client does not create apparent settlement authority for his attorney merely by retaining the attorney. Fennell, 865 F.2d at 502 (citing United States v. Beebe, 180 U.S. at 352). Apparent authority is created only by affirmative representations of the principal to the third party, and does not arise out of things that the principal fails to say to opposing counsel. See Fennell, 865 F.2d at 502. Thus, in Fennell, the Second Circuit held that the fact that the plaintiff knew settlement was being discussed, did not ask his attorneys not to discuss settlement, would have accepted a higher settlement figure, and did not tell defendant's counsel that the authority of his counsel was limited

in any way, did not create apparent authority to settle on his behalf.  Id.  The Second Circuit explained that these circumstances involved only things which the plaintiff did *not* say to opposing counsel and therefore were not sufficient to create apparent authority.  Id.

### 3. No Binding Settlement Agreement Was Reached in This Case

Under federal law, the oral agreement entered into on November 12, 2008, is not enforceable because plaintiff herself did not agree to the settlement.  Rather, it was her attorney, Mr. Odifile, who orally entered into the agreement and he did not have apparent authority to settle the case.

Defendants argue that Vesterhalt gave Mr. Odifile apparent authority because she appeared with him at the September 23, 2008, settlement conference before Magistrate Judge Katz and because she failed to tell defendants' counsel that Mr. Odifile was not authorized to settle on her behalf.  However, apparent authority is created only by the affirmative representation of the client that such authority exists, and not by the failure to deny the existence of such authority.  See Fennell, 865 F.2d at 502.  Mr. Odifile did not have authority to settle because Vesterhalt never communicated to defendants that he had such authority.

In addition, no binding written agreement was created because Vesterhalt never returned a signed agreement to

defendants or to the court. Defense counsel's letter enclosing
the settlement paperwork requested that Vesterhalt execute the
stipulation and general release and returned the documents to
him. In addition, the stipulation itself stated that "Vesterhalt
shall execute and deliver to defendants' attorney all documents
necessary to effect this settlement, including, without
limitation, a release." Therefore, defendants requested a
specific form of acceptance of their settlement offer, that is,
signing and returning the documents. Because Vesterhalt did not
return the documents, a binding contract was never created. See
Restatement (Second) of Contracts § 60 ("If an offer prescribes
the place, time or manner of acceptance its terms in this respect
must be complied with in order to create a contract.") Rather,
prior to delivering the documents to defendants or the court,
Vesterhalt decided not to settle her claims and informed her
lawyer of her decision.

The fact that Mr. Odifile informed the court and opposing
counsel that Vesterhalt had physically signed the documents
before instructing him not to send them is of no moment.
Acceptance was not completed because the documents were not
delivered to defendants. Moreover, because Mr. Odifile was
clearly acting contrary to the wishes and explicit instructions
of his client, he lacked both apparent and actual authority to
accept the settlement offer when he made this communication.

Therefore, plaintiff is not bound by the settlement agreement drafted by defendants.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.  Defendants' motion to enforce settlement is denied.


SO ORDERED.

Dated:     New York, New York
           October 23, 2009

                              S/_____
                                MIRIAM GOLDMAN CEDARBAUM
                              United States District Judge